[Cite as *Tornado Technologies, Inc. v. Quality Control Inspection, Inc.*, 2012-Ohio-3451.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97514**

# TORNADO TECHNOLOGIES, INC.

PLAINTIFF-APPELLEE

vs.

# QUALITY CONTROL INSPECTION, INC., ET AL.

DEFENDANTS-APPELLANTS

**JUDGMENT:
AFFIRMED**

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-696827

**BEFORE:**    Blackmon, A.J., E. Gallagher, J., and Kilbane, J.

**RELEASED AND JOURNALIZED:**    August 2, 2012

**ATTORNEYS FOR APPELLANT**

Charles A. Bowers
Michael J. Zbiegien, Jr.
Taft, Stettinius & Hollister LLP
200 Public Square, Suite 3500
Cleveland, Ohio 44114-2302


**ATTORNEYS FOR APPELLEES**

**Tornado Technologies, Inc.**

Debra J. Horn
Meyers, Roman Friedberg & Lewis
28601 Chagrin Blvd., Suite 500
Cleveland, Ohio 44122

**Fitzgibbons Arnold & Company Agency, Inc., Et Al.**

George V. Pilat
McIntyre, Kahn & Kruse Co., L.P.A.
The Galleria & Towers at Erieview
1301 East Ninth Street, Suite 2200
Cleveland, Ohio 44114

**Ohio Casualty Corp.**

Ronald A. Rispo
Randy L. Taylor
Weston Hurd, LLP
The Tower At Erieview
1301 East Ninth Street, Stuite 1900
Cleveland, Ohio 44114

PATRICIA ANN BLACKMON, A.J.:

**{¶1}** Appellant Quality Control Inspection, Inc. ("QCI") appeals the trial court's decision granting summary in favor of appellees Fitzgibbons, Arnold & Company Agency, Inc. and Clark Fitzgibbons ("FAC"). QCI assigns the following error for our review:

> **I. The trial court erred when it granted Fitzgibbons Arnold & Company Agency, Inc. and Clark Fitzgibbons' motion for summary judgment.**

**{¶2}** Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.

**{¶3}** QCI was founded in 1985 by Rick Capone and is a construction inspection firm, which provides engineering and architectural support services for governments and private contractors on construction projects. FAC was formed in 1991 by Clark Fitzgibbons and Dick Arnold and is an independent insurance agency, which arranges personal and commercial lines of coverage, as well as bonds, health, and benefits coverage. In 1997, QCI became a client of FAC, purchasing a wide range of insurance coverages.

**{¶4}** Beginning in 2004, QCI began storing its electronic data off-site on servers that would eventually be owned by Tornado Technologies, Inc. ("Tornado"). On November 28, 2008, as a result of an electrical surge, Tornado's server crashed and substantially all of QCI's data stored on the server was lost. Tornado's backup file was

affected by the electrical surge, and, although they were able to retrieve and restore some files, they were unable to restore all of QCI data.

{¶5} QCI reported the incident to FAC, who in turn forwarded a claim to Ohio Casualty, the insurance carrier. After investigating the claim, Ohio Casualty issued a check in the amount of $50,000 to QCI. This amount represented the limit of coverage under the commercial computer coverage policy.

{¶6} On June 26, 2009, Tornado filed a breach of contract action against QCI alleging that it had not been paid for services rendered and QCI had an unpaid balance of $50,615. On September 3, 2009, QCI filed its answer, counterclaimed against Tornado, and joined FAC, Clark Fitzgibbons, and Ohio Casualty as defendants in its counterclaim.

{¶7} In its counterclaim, QCI asserted claims of breach of contract, promissory estoppel, and negligence against Tornado. QCI alleged said claims flowed from the failure of Tornado's servers and the resultant loss of QCI's data. QCI alleged that Tornado's failure to adequately store the data caused them to suffer losses exceeding $1 million.

{¶8} QCI asserted claims of breach of contract against Ohio Casualty and breach of fiduciary duty, negligence, along with insurance malpractice against FAC and Clark Fitzgibbons. As against these defendants, QCI alleged that FAC failed to ensure that it was protected against catastrophes such as Tornado's server failure.

{¶9}   On April 30, 2010, Consolidated Insurance Company, the insurer under Ohio Casualty, filed an amended answer and asserted a subrogation claim against Tornado for the $50,000 that was paid to QCI.

{¶10}   After significant motion practice, on May 14, 2010, FAC and Clark Fitzgibbons filed its motion for summary judgment on the grounds that QCI never asked for insurance coverage on computer, electronic data, or backup that was stored off-site. QCI filed its motion in opposition on June 23, 2010.

{¶11} On May 23, 2011, the trial court granted FAC and Clark Fitzgibbons's motion for summary judgment.   Thereafter, on October 3, 2011, Tornado, QCI, and Ohio Casualty proceeded to a jury trial on the remaining matters.   The jury returned a verdict in Tornado's favor and against QCI in the amount $71,299.46.   QCI did not appeal the jury verdict.   QCI timely appealed the trial court's decision granting summary judgment in favor of FAC and Clark Fitzgibbons.

## Summary Judgment

{¶12}   In the sole assigned error, QCI argues the trial court erred when it granted summary judgment in favor of FAC and Clark Fitzgibbons.

{¶13}   We review an appeal from summary judgment under a de novo standard of review.   *Baiko v. Mays*, 140 Ohio App.3d 1, 746 N.E.2d 618 (8th Dist.2000), citing *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987); *N.E. Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.*, 121 Ohio App.3d 188, 699 N.E.2d 534 (8th

Dist.1997). Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.

{¶14} Under Civ.R. 56, summary judgment is appropriate when, (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) when viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party.

{¶15} The moving party carries an initial burden of setting forth specific facts that demonstrate his or her entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the movant fails to meet this burden, summary judgment is not appropriate; if the movant does meet this burden, summary judgment will be appropriate only if the nonmovant fails to establish the existence of a genuine issue of material fact. *Id*. at 293.

{¶16} In the instant case, QCI argues FAC failed to competently advise it as to the type and amount of coverage that would have guarded against the loss incurred when Tornado's server crashed. This alleged failure, QCI claims, amounted to negligence, insurance agent malpractice, and breach of fiduciary duty.

{¶17} To establish any type of actionable negligence, a plaintiff must show the existence of a duty, a breach of that duty, and injury that is the proximate result of that breach. *Delta Fuels, Inc. v. Consol. Environmental. Servs.*, 6th Dist. No. L-11-1054, 2012-Ohio-2227, citing *Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265

(1989). *See also Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, citing *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 472 N.E.2d 707 (1984).

**{¶18}** In the insurance context, an action for negligence may be based upon an insurance agent's failure to procure insurance. *Gerace-Flick v. Westfield Natl. Ins. Co.*, 7th Dist. No. 01 CO 45, 2002-Ohio-5222, citing *Minor v. Allstate Ins. Co.*, 111 Ohio App.3d 16, 21, 675 N.E.2d 550 (2d Dist.1996). Whether an agent has negligently failed to procure insurance is ordinarily a question of fact. *Id.*

**{¶19}** Pertinent to the elements of duty and breach, an insurance agency has a duty to exercise good faith and reasonable diligence in obtaining insurance that its customer requests. *Moor v. Am. Family Ins. Co.*, 3d Dist. No. 4-09-13, 2009-Ohio-4442, citing *Fry v. Walters & Peck Agency, Inc.*, 141 Ohio App.3d 303, 310, 750 N.E.2d 1194 (6th Dist.2001). *See also First Catholic Slovak Union v. Buckeye Union Ins.*, 27 Ohio App.3d 169, 170, 499 N.E.2d 1303 (8th Dist.1986); *Stuart v. Natl. Indemn. Co.*, 7 Ohio App.3d 63, 454 N.E.2d 158 (8th Dist.1982). However, an insurance agent owes no duty to seek replacement coverage for an insured in the absence of a request by the insured to do so. *See Slovak.*

**{¶20}** FAC maintains it was not on notice that QCI was storing electronic data off-site and, more importantly, QCI never asked FAC to place or arrange any coverage for data stored with Tornado. The record reveals quite a number of instances where Capone was asked if he ever notified FAC that electronic data was being stored off-site

and Capone indicated he could not recall.  For example, Capone testified as follows during his deposition:

> Q.   **Rick, with respect to remote servers and the off-site data that QCI and the other companies had, did you ever talk with Clark Fitzgibbons about an amount of coverage for that data?**
>
> A.   **I don't believe so, no.**
>
> Q.   **Did you ever talk about how much data, what kind of data was being stored off-site?**
>
> A.   **You know, frankly, I don't think Clark and I ever had a conversation about data ever stored, no.**
>
> Q.   **You said you do 400 projects a year, approximately?**
>
> A.   **Yes.**
>
> Q.   **Obviously some are going to be 5 pages and others are going to be 5,000 pages.  Did you ever talk about that in the context of how much material or data was being stored on the remote servers?**
>
> A.   **No.** Capone Depo. 157-158.

{¶21}  Clark Fitzgibbons testified that QCI became a customer in 1997, and he personally took over the account in 1999.  Fitzgibbons testified that he generally met with Capone three times per year, namely: a pre-renewal meeting held 60-90 days prior to renewal, specifically to go over the previous year's coverage and discuss changes for the upcoming year; a renewal meeting to present quotes and prices for the renewal coverage; and finally a meeting to deliver the renewal policy.  Capone has acknowledged that the three annual meetings took place.

**{¶22}** During any of these three meetings, Capone had multiple opportunities over the years to put FAC on notice that QCI was storing electronic data off-site and multiple opportunities to request the appropriate coverage. In addition, when the renewal policy was delivered, Capone had the opportunity to review the coverage and request changes. The insurance policy, at issue, Computer Coverage Form states in pertinent part as follows:

> **Duplicates in Storage**
>
> **This policy is extended to cover "loss" to duplicates backup Software while stored at a location not described in the Declarations. The most we will pay under this Coverage Extension is the lesser of:**
>
> **(1) the actual cost to replace the duplicate backup Software; or**
>
> **(2) $50,000.**
>
> **Extra Expenses**
>
> **We will pay the actual necessary and reasonable extra expenses you incur to continue the normal computer operations of your business, as a direct result of "loss" by a Covered Cause of "Loss" that damages or destroys any of the following during the policy period:**
>
> **(1) Covered Property that is not situated at a described premises Newly Acquired Location, Temporary Location or in transit.**

**{¶23}** We specifically look at the declaration's reference to duplicate storage and references different locations, as well as coverage during transit; thus, QCI should have notified FAC that they were storing data at Tornado and queried the propriety of additional coverage. An insured has a corresponding duty to examine the coverage provided and is charged with knowledge of the contents of his or her own insurance

policies. *Fry*, 141 Ohio App.3d at 310. *See also Craggett v. Adell Ins. Agency*, 92 Ohio App.3d 443, 453, 635 N.E.2d 1326 (8th Dist.1993); *Nickschinski v. Sentry Ins. Co.*, 88 Ohio App.3d 185, 195, 623 N.E.2d 660 (8th Dist.1993). Thus, the onus was on QCI to review the policy declaration, notify FAC that it was storing electronic data with Tornado, and request the appropriate level of coverage. As such, we conclude the trial court did not err in granting summary judgment in favor of FAC on QCI's agency negligence claim.

{¶24} Nonetheless, QCI maintains that it relied on FAC's expertise to procure sufficient coverage. In essence, QCI argue that FAC were fiduciaries with a higher duty of care, a duty not only to provide the coverage requested but also to advise QCI of the amount of coverage needed.

{¶25} The Ohio Supreme Court has defined a "fiduciary relationship" as one "in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *Nichols v. Schwendeman*, 10th Dist. No. 07AP-433, 2007-Ohio-6602, citing *Ed Schory & Sons, Inc. v. Soc. Natl. Bank*, 75 Ohio St. 3d 433, 442, 1996-Ohio-194, 662 N.E.2d 1074, quoting *In re Termination of Emp.*, 40 Ohio St.2d 107, 115, 321 N.E.2d 603 (1974).

{¶26} A fiduciary relationship may be created out of an informal relationship "only when both parties understand that a special trust or confidence has been reposed." *Umbaugh Pole Bldg. Co., Inc. v. Scott*, 58 Ohio St.2d 282, 390 N.E.2d 320 (1979),

paragraph one of the syllabus; *Hoyt v. Nationwide Mut. Ins. Co.*, 10th Dist. No. 04AP-941, 2005-Ohio-6367. Thus, a fiduciary relationship cannot be unilateral; it must be mutual. *Horak v. Nationwide Ins. Co.*, 9th Dist. No. CA 23327, 2007-Ohio-3744.

{¶27} However, it is important to note that while the law has recognized a public interest in fostering certain professional relationships, such as the doctor-patient and attorney-client relationships, it has not recognized the insurance agent-client relationship to be of similar importance. *Rose v. Landen*, 12th Dist. No. CA2004-06-066, 2005-Ohio-1623, citing *Nielsen Ents., Inc. v. Ins. Unlimited Agency, Inc.*, 10th Dist. No. 85AP-781, 1986 Ohio App. LEXIS 6754 (May 8, 1986). *See also Roberts v. Maichl*, 1st Dist. No. C-040002, 2004-Ohio-4665.

{¶28} In this case, we find that the record shows the relationship between QCI and FAC was nothing more than an ordinary business relationship between insurance agent and client. Furthermore, QCI was in the best position to know how much coverage it needed. QCI knew the quantity and the quality of the data it was storing off-site with Tornado. QCI knew that its off-site coverage was limited to $50,000. QCI was in a position to know the type of impact the loss of said data would have on its company. QCI was in a position to properly forecast the financial cost of retrieving or re-creating data that could be lost off-site or even on its own premises. Given that QCI was in the uniquely superior position of knowing the nature and scope of its business needs, it had a duty to bring these relevant concerns to FAC's attention and request the appropriate coverage.

**{¶29}** As previously noted, the policy declaration clearly stated that the duplicate storage limit was set at $50,000. QCI received a renewal policy for more than five years reflecting this fact, but they failed to seek the additional coverage or notify FAC of the off-site storage of their electronic data. It is our opinion that the storage off-site in and of itself was not the concern. The concern was the limit of $50,000. QCI was best able to evaluate whether that limit was too much or too small.

**{¶30}** We conclude that FAC's exercise of good faith and reasonable diligence was satisfied in obtaining the insurance as requested by QCI over the years, but there was no duty to advise QCI, without them furnishing additional and pertinent information, that additional coverage was needed. As such, we find no evidence from which reasonable minds could conclude that the relationship between QCI and FAC was anything other than an ordinary business relationship between an insurance agent and a client. Thus, we find no error in the trial court's entry of summary judgment in favor of FAC on QCI's breach of fiduciary duty claim.

**{¶31}** Turning now to QCI's claim that FAC committed insurance agent malpractice. Having concluded in the foregoing discussion that FAC was not negligent and that it was not in a fiduciary relationship with QCI, we find QCI's claim that FAC committed insurance agent malpractice unsustainable. As such, we conclude that there was no error in the trial court's entry of summary judgment in favor of FAC on the aforementioned claims. Accordingly, we overrule the sole assigned error.

**{¶32}** Judgment affirmed.

It is ordered that appellees recover from appellant their costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON, ADMINISTRATIVE JUDGE

EILEEN A. GALLAGHER, J., and
MARY EILEEN KILBANE, J., CONCUR