[Cite as *Vinecourt Landscaping v. Kleve*, 2013-Ohio-5825.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| VINECOURT LANDSCAPING INC., et al., | : | **O P I N I O N** |
| Plaintiffs-Appellants, | : | |
| - vs - | : | **CASE NO. 2013-G-3142** |
| DAVID R. KLEVE, et al., | : | |
| Defendants-Appellees. | : | |

Civil Appeal from the Geauga County Court of Common Pleas, Case No. 12P000673.

Judgment: Affirmed in part, reversed in part, and remanded.

*Timothy A. Shimko*, Timothy A. Shimko & Assocs. Co., L.P.A. 1801 East Ninth St., 1010 Ohio Savings Plaza, Cleveland, OH, 44114 (For Plaintiffs-Appellants).

*Carol Ann Koncsol Metz*, Buckley King, LPA, 1400 Fifth Third Center, 600 Superior Avenue East, Cleveland, OH 44114 (For Defendants-Appellees).

CYNTHIA WESTCOTT RICE, J.

{¶1}    Appellants, Vinecourt Landscaping, et al., appeal from the judgment of the Geauga County Court of Common Pleas, entering summary judgment in favor of appellees, David R. Kleve, et al.  For the reasons discussed in this opinion, we affirm the trial court's judgment in part, reverse the judgment in part, and remand the matter for further proceedings.

{¶2}    Appellants Jim and Jill Vinecourt are owners of appellant-Vinecourt Landscaping, Inc.  Appellants have been customers of appellee-Kleve & Associates

Insurance Agency, Inc., since 1991. Appellants dealt directly with insurance agent, appellee-David Kleve, who, in the course of their business relationship, procured a commercial liability policy through Motorists Mutual Insurance Company. The policy provided liability coverage, building coverage, business property coverage, and commercial inland marine coverage for scheduled tools and equipment.

{¶3} Jim and Jill maintained they did not understand their insurance coverage and did not question the nature of the coverage they possessed. And they did not question David regarding the nature, extent, or scope of the coverage; instead, they testified, they relied exclusively upon David to recommend proper insurance coverage that would meet their needs.

{¶4} Each year Jim and Jill received a copy of their insurance policy that expressly reflected the limits of coverage for business personal property as well as the items listed on the schedule of insurance. The Vinecourts also received a checklist setting forth appellants' actual coverage as well as additional available types of coverage that appellants did not have but could purchase. The Vinecourts believed they had "full coverage" for their business, even though the annual updates showed they did not possess, inter alia, "business interruption coverage." The Vinecourts never asked David about the lack of coverage or for an explanation of policy coverage because, in their view, they trusted that David would recommend all necessary coverage for the needs of their business.

{¶5} David stated he gives advice and recommendations to suit his clients' specific needs. He does not, however, recommend what limits on coverage they should set. And David maintained he procures only the coverage that his clients specifically

2

request. Although they relied upon David's advice, Jim stated that David did not have authority to make insurance decisions for the business.

{¶6} In 2006, the Vinecourts began submitting annual lists of scheduled equipment and inventory to appellees to ensure the items were covered. Each time an increase in coverage occurred, that increase was based upon the Vinecourts' lists and reflected in the policy. Jim testified he was aware of the equipment that was covered under the policy and never took issue with the coverage. He further confirmed he was aware that policy provided $27,500 in coverage for business personal property and did not question David regarding the implications of maintaining or increasing the coverage amount.

{¶7} In late 2006, the Vinecourts built an addition onto one of their business buildings. Upon David's recommendation, the Vinecourts insured the building for $32,000; Jim and Jill neither questioned this amount nor did they request additional coverage in later years.

{¶8} On January 27, 2011, a fire in appellants' warehouse caused significant damage to the building and other business property. After the fire, Motorists paid the policy limits; the record indicates, however, there was over $41,000 in equipment and inventory that was not covered under the policy procured by David. Moreover, the uncovered loss of the building was estimated at $120,000. And, appellants alleged, they suffered a business interruption loss in excess of $300,000.

{¶9} Appellants filed suit alleging appellees were negligent and breached their fiduciary duties for failing to recommend greater coverage. In particular, they alleged their policy was deficient because (1) business interruption coverage was not included;

3

(2) the insurance limits for the building were insufficient; (3) the schedule of tools and equipment was incomplete; and (4) the limits of insurance for unscheduled tools and equipment were insufficient. Appellees moved for summary judgment and appellants opposed the motion.

{¶10} The trial court subsequently granted appellees' motion, ruling appellees owed appellants no fiduciary duty; the court further determined, notwithstanding its conclusion regarding the lack of fiduciary relationship, appellants' professional negligence and breach of fiduciary duty claims were barred by the applicable statute of limitations. And, finally, the court determined appellees were not negligent in failing to procure additional insurance on the unscheduled tools and equipment. This appeal follows.

{¶11} Appellants assign four errors for this court's review, all of which challenge the trial court's entry of summary judgment in appellees' favor. Summary judgment is proper where (1) there is no genuine issue of material fact remaining to be litigated; (2) the movant is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and, viewing the evidence in the non-moving party's favor, that conclusion favors the movant. *See e.g.* Civ.R.56(C).

{¶12} When considering a motion for summary judgment, the trial court may not weigh the evidence or select among reasonable inferences. *Dupler v. Mansfield Journal Co.*, 64 Ohio St.2d 116, 121 (1980). Rather, all doubts and questions must be resolved in the non-moving party's favor. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 359

4

(1992). An appellate court reviews a trial court's entry of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

{¶13} Appellants' first assignment of error provides:

{¶14} "The trial court erred as a matter of law when it held that appellants' claims against appellees for failing to procure insurance coverage were barred by the statute of limitations."

{¶15} Under their first assignment of error, appellants assert the trial court erred in concluding appellants' cause of action for professional negligence accrued at the time of appellees' purported negligent acts, rather than at the time they sustained damage not covered under their insurance policy. Appellants argue, prior to sustaining damage, they had no legally protected interest that was harmed and therefore no cause of action.

{¶16} R.C. 2305.09(D) sets a four-year statute of limitations period on claims alleging "an injury to the rights of the plaintiff not arising out of contract * * *." Neither party disputes the application of R.C. 2305.09 to the instant case. Rather, at issue is whether appellants' professional negligence claim accrued, and the statute began to run, at the point they purchased the insurance coverage, in 2006, or when they suffered damages that were not covered under the policy.

{¶17} Appellants' position is premised upon the Ohio Supreme Court's ruling in *Kunz v. Buckeye Union Ins. Co.*, 1 Ohio St.3d 79 (1982). In *Kunz*, the plaintiffs purchased insurance from the defendant insurance agent for business equipment coverage. The plaintiffs suffered an uncovered loss and filed suit against the agent for negligently failing to provide the requested coverage. The agent moved for summary judgment, asserting the four-year statute of limitations set forth under R.C. 2305.09 had

5

expired. The trial court granted the motion and the court of appeals affirmed the judgment.

{¶18} The Supreme Court of Ohio reversed the judgment of the appellate court ruling that R.C. 2305.09 governed the statute-of-limitations issue. The court analogized the cause of action to medical or legal malpractice cases in which a doctor or lawyer failed to perform professional services for which a patient or client had contractually bargained. *Kunz*, at 80. The court applied the "delayed-damages rule," holding the plaintiffs' cause of action did not accrue until they suffered a loss to their equipment. And, because the plaintiffs filed their suit within four years of the accident, the court held the four-year statute of limitations period had not expired. *Id.* at 81-82.

{¶19} Although the Supreme Court has not expressly overruled *Kunz*, it has since declined to follow its holding in other causes of action alleging professional negligence that are governed by R.C. 2305.09. In *Investors REIT One v. Jacobs*, 46 Ohio St.3d 176 (1989), the court addressed the application of the "discovery rule" to a claim of accountant negligence governed by R.C. 2305.09.[1] In that matter, the Supreme Court pointed out R.C. 2305.09 contains a limited discovery rule that provides: "'If the action is for trespassing under ground or injury to mines, or for the wrongful taking of personal property, the causes thereof shall not accrue until the wrongdoer is discovered; nor, if it is for fraud, until the fraud is discovered.'" *Investors REIT One*, *supra*, at 181, quoting R.C. 2305.09. To the extent the statute expressly limited the application of a discovery rule to specific circumstances, the Court concluded, it did not

---

1. The "discovery rule" provides "that a cause of action accrues for purposes of the governing statute of limitations at the time when the plaintiff discovers or, in the exercise of reasonable care, should have discovered the complained of injury." *Investe REIT One*, *supra*, at 179.

6

apply to "professional negligence claims against accountants." *Investors REIT One*, *supra*, at 182.

{¶20} Moreover, in *Flagstar Bank v. Airline Union's Mortgage Co.*, 128 Ohio St.3d 529, 2011-Ohio-1961, the Court held that "[a] cause of action for professional negligence against a property appraiser accrues on the date that the negligent act is committed, and the four-year statute of limitations commences on that date." *Id.* at syllabus. The Court in *Flagstar* rejected the application of the "delayed-damages rule," even though it acknowledged it had applied the rule in *Kunz, supra.*

{¶21} Although the foregoing cases addressed professional negligence in contexts different than that of an insurance agent's purported negligence, the Second Appellate District recently applied the rule of *Investors REIT One*, which was reaffirmed by *Flagstar* to such a cause, notwithstanding *Kunz*. In *Auckerman v. Rogers*, 2d Dist. Greene No. 2011-CA-23, 2012-Ohio-23 (*discretionary appeal not allowed by* 2012-Ohio-3054, the court reviewed the relevant case law and concluded the Supreme Court, in *Flagstar*, "implicitly overruled *Kunz* with regard to application of the delayed-damages rule in cases of professional negligence governed by R.C. 2305.09." *Auckerman*, *supra*, at ¶17. The court pointed out that, in *Kunz*, the Court characterized a negligent-procurement claim against an insurance agent as one alleging negligent performance of "professional services." *Auckerman*, *supra*, citing *Kunz*, at 80. And, the *Auckerman* court further underscored that *Flagstar* expressly stated that "'a cause of action for professional negligence accrues when the act is committed.'" *Auckerman*, *supra*, quoting *Flagstar,* at ¶27. Given the conceptual breadth of this conclusion, the *Auckerman* court reasoned that *Flagstar* "foreclosed the application of a discovery or a

7

delayed-damages rule in cases involving professional negligence governed by R.C. 2305.09." *Auckerman*, *supra*. The *Auckerman* court acknowledged that, even though *Flagstar* addressed an appraiser's professional negligence and *Investors REIT One* addressed accountant negligence, it saw "no principled reason why an insurance agent's professional negligence should be treated differently." *Auckerman*, *supra*, ¶18.

{¶22} While we understand and appreciate the reasoning of the Second Appellate District in *Auckerman*, we differ with its conclusion that *Flagstar* operated to implicitly overrule *Kunz*. The syllabus of *Flagstar* explicitly limits its holding, stating: "A cause of action for professional negligence *against a property appraiser* accrues on the date that the negligent act is committed, and the four-year statute of limitations commences on that date." And, as indicated above, the Court, in *Flagstar*, actually discussed *Kunz* in the course of its analysis. Far from suggesting an intent to overrule *Kunz*, the case was cited with ostensible approval when, in the course of discussing the delayed-damages rule, the Court stated, "[w]e have * * * applied the rule to a case involving the purchase of insurance coverage [and held] "'The statute of limitations as to torts does not usually begin to run until the tort is complete. A tort is ordinarily not complete until there has been an invasion of a legally protected interest of the plaintiff.'"" *Flagstar*, *supra*, at ¶20, quoting *Kuntz*, at 81, quoting *Austin v. Fultin Ins. Co.*, 444 P.2d 536, 539 (1968).

{¶23} The Court did not, in *Flagstar*, specifically conclude it was completely abandoning the rule announced in *Kunz* and, given the limited scope of the statement of law in the *Flagstar* syllabus, we decline to read *Flagstar* as implicitly overruling previous precedent. Had the Court intended *Kunz* to be explicitly overruled, it would have said

8

so in the course of its legal discussion; had it intended *Kunz* to be implicitly overruled, its legal holding would have been expressed in broader terms, extending the *Investers REIT One* rule to *all* professional negligence causes of action. It did neither. And we decline to extrapolate an intent to overrule *Kunz*, notwithstanding the reasoning lead opinion in *Auckerman*.[2]

**{¶24}** There are also policy reasons for not discarding *Kunz* without an express pronouncement by the Supreme Court. First, an action sounding in negligence *requires* the existence of a duty; breach of that duty, *and an injury proximately caused by the breach. Jeffers v. Olexo*, 43 Ohio St.3d 140, 142 (1989). An individual can engage in negligent conduct, but a cause of action *premised upon* negligence necessitates legal harm. It consequently stands to reason that a statute of limitations should not commence running until a plaintiff has sustained actual damages as a result of a tortfeasor's acts or omissions. To adopt the rule of *Auckerman*, without an express statement from the Supreme Court that *Kunz* has been overruled and the "delayed-damages rule" is not applicable to negligent procurement claims, flies not only in the face of stare decisis, but also fundamentally obfuscates the principles of traditional tort law.

**{¶25}** Moreover, statutes of limitations foster important public policies; to wit: they ensure fairness to a defendant; they encourage the efficient prosecution of claims; they function to suppress stale or fraudulent claims; and they help avoid the inconvenience engendered by delay and by the difficulty in proving older cases.

---

2. We acknowledge the Supreme Court declined to accept *Auckerman* for discretionary review. This, however, does not necessarily imply the Court adopted the appellate court's decision. Rather, a rejection of a jurisdictional appeal simply suggests the Court did not deem the issue sufficiently significant to consider.

*Cundall v. U.S. Bank*, 122 Ohio St.3d 188, 2009-Ohio-2523, ¶22. None of the foregoing interests are served, however, where the application of a statute of limitations functions to negate a cause of action before that cause becomes legally actionable. In short, justice is not served where a tort dies before a reasonable person has an opportunity, in the exercise of ordinary diligence, to even *seek* redress.

{¶26} Given the foregoing, we hold, pursuant to *Kunz*, appellants' cause of action accrued and the statute of limitations began to run when they were damaged. The trial court therefore erred when it ruled the Vinecourts' professional negligence claim was barred by the statute of limitations. Their cause of action accrued in January 2011, when they sustained damages as a result of the fire. Because the instant cause of action was filed within the applicable four-year limitation period, i.e., in July 2012, we hold appellants' cause of action is not barred by operation of R.C. 2305.09.

{¶27} Appellants' first assignment of error is sustained.

{¶28} Appellants' second assignment of error provides:

{¶29} "The trial court erred as a matter of law when it held that appellants' claims for breach of fiduciary duty were barred by the statute of limitations."

{¶30} Appellants contend the trial court erred in granting summary judgment in appellees' favor on their claim for breach of fiduciary duty because their cause of action did not accrue until January 29, 2011, the date they suffered damages. Appellants again cite *Kunz* as authority for this proposition. Given our disposition of appellants' first assignment of error, and that the statute of limitations for a breach of fiduciary duty claim is also governed by R.C. 2305.09, we agree with appellants. *See e.g. Marks v. Reliable Title Agency, Inc.*, 7th Dist. Mahoning No. 11 MA 22, 2012-Ohio-3006, ¶14.

10

**{¶31}** Appellants' second assignment of error is sustained.

**{¶32}** Appellants' third assignment of error provides:

**{¶33}** "Appellants' evidence was sufficient to establish a fiduciary relationship between appellants and appellee[s]."

**{¶34}** Appellants assert they produced enough evidence to create a genuine issue of material fact relating to the fiduciary nature of their relationship with appellees. In particular, appellants underscore they had employed appellees since 1991 for their business insurance needs. They further point out they had no understanding of insurance and relied upon appellee-Kleve to recommend and procure insurance necessary to cover their business.

**{¶35}** A "fiduciary relationship" is one "in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *Nichols v. Schwendeman*, 10th Dist. Franklin No. 07AP-433, 2007-Ohio-6602, ¶14, citing *Ed Schory & Sons, Inc. v. Francis*, 75 Ohio St.3d 433, 442 (1996). Although the law has recognized a public interest in fostering certain professional relationships as fiduciary relationships, e.g., the doctor-patient and attorney-client relationships, it does not recognize the insurance agent-client relationship to be of similar importance. *Advent v. Allstate Ins. Co.*, 10th Dist. Franklin No. 05AP-1092, 2006-Ohio-2743, ¶14, citing *Nielsen Enterprises, Inc. v. Ins. Unlimited Agency, Inc.* 10th Dist. Franklin No. 85AP-781, 1986 Ohio App. LEXIS 6754, *7 (May 8, 1986). Thus, as a general rule, "the relationship between an insurance agent and his client is not a fiduciary relationship, but rather, an ordinary business relationship." *Advent*, *supra*; *see also Slovak v. Adams*,

11

141 Ohio App.3d 838, 846 (6th Dist.2001); *Gillin v. Indiana Ins. Co.,* 2d Dist. Montgomery No. CA17108, 1998 Ohio App. LEXIS 5039. (Oct. 30, 1998).

**{¶36}** Notwithstanding these points, however, a fiduciary relationship may be inferred from an otherwise informal business relationship "when both parties understand that a special trust or confidence has been reposed." *Umbaugh Pole Bldg Co., Inc. v. Scott*, 58 Ohio St.2d 282 (1979), paragraph one of the syllabus; *Tornado Techs., Inc. v. Quality Control Inspection, Inc.*, 8th Dist. Cuyahoga No. 97514, 2012-Ohio-3451, ¶26. Consequently, a fiduciary relationship cannot be unilateral and may only exist where the parties have a mutual recognition of the relationship. *Id.,* citing *Horak v. Nationwide Ins. Co.,* 9th Dist. Summit No. CA 23327, 2009-Ohio-3744, ¶32.

**{¶37}** Here, Jim testified he has known David since they were children; he testified he has used David as an agent since the early 1990s. Even though he received annual information regarding his insurance coverage, Jim testified he did not understand his policies and he only met with David "every couple years." Jim testified, despite his lack of understanding, he never requested an explanation of the policy because "he trusted [David's] judgment." Jim stated that, prior to the fire, he received a list of equipment that was insured under the policy. Jim stated he reviewed it but was "mainly looking at the price." Jim was aware that his insurance policy limited coverage to $27,500 for business personal property and $8,200 for electronic data processing equipment; and, although Jim testified he did not understand that his policy insured building and tool storage for $15,000, he did not contact David to ask him what the coverage limitations meant. Jim testified he trusted David's recommendations on policy increases, but David was not permitted to make independent decisions for Jim's

12

company. Jim further testified he could not recall if he explicitly told David he relied upon him to make insurance decisions.

{¶38} Jill also testified she did not understand the company's insurance policy procured by David. She explained she and Jim trusted and relied upon Dave to make sure they were "covered for what [they] needed." Jill admitted Jim mostly dealt with David and she did not seek explanations of what was covered. Regardless, Jill testified she and Jim relied on Dave to obtain a policy to "make sure [they were] covered."

{¶39} Alternatively, David testified that, although he knew the Vinecourts personally and they shared mutual friends, their acquaintanceship was a business relationship. He further testified that he was aware that the Vinecourts did business with other insurance companies for life and health insurance coverage. Regarding the Vinecourts' policy, David testified he recommended policy coverage based upon the information given to him by the Vinecourts. He further testified that, at any time, the Vinecourts were free to accept or reject any coverage option he recommended. And, although Vinecourts argued David did not recommend or discuss the import and advantages of business-interruption coverage, David testified he prepared and sent appellants checklists itemizing their actual coverage and additional coverages that were available, including business-interruption coverage. Despite the checklists, the Vinecourts never inquired into or requested business-interruption coverage.

{¶40} Given the foregoing, the Vinecourts apparently saw David's role as not only a procurer of insurance, but also as an overseer and prognosticator of their insurance needs. They admittedly testified they did not understand their policy; they did not, however, request explanations of the coverage. In doing so, they presumed David

13

knew and understood their ignorance and, in light of this knowledge and understanding, David could and should anticipate when they desired additional coverage that they had not previously requested.

{¶41} David, on the other hand, based his recommendations upon the information the Vinecourts provided him. This was the protocol he used with all clients. David sent the Vinecourts information pertaining to their policy and checklists showing the coverage they had as well as coverage they could request. This also was company protocol. Even assuming the Vinecourts reposed a special trust or confidence in David, the evidence does not demonstrate the bilateral understanding required to convert an arms-length business relationship into a fiduciary one. We therefore hold the trial court did not err when it concluded, as a matter of law, David did not have a fiduciary relationship with the Vinecourts.

{¶42} Appellants' third assignment of error lacks merit.

{¶43} Appellants' final assignment of error provides:

{¶44} "The trial court erred when it ruled as a matter of law that appellants failed to prove that appellees' failure to provide sufficient coverage for appellants' tools and equipment breached any duties."

{¶45} Preliminarily, appellees argue this court need not address the foregoing assignment of error because appellants did not contest the issue in their memorandum in opposition to summary judgment. Appellants, in their reply brief, contend they were not required to contest the issue because appellees did not move for summary judgment on the substantive issue of their alleged professional negligence in failing to procure adequate coverage. A review of appellees' motion for summary judgment,

14

however, demonstrates otherwise. Appellees argued they were entitled to summary judgment on appellants' allegations of liability arising from the inadequate limits for the scheduled and unscheduled equipment. In effect, appellees argued they were not legally responsible for any loss suffered from the purported underinsured tools and equipment. Appellants did not address this issue in their memorandum in opposition.

{¶46} In its judgment entry, the trial court stated:

{¶47} "[Appellees] have stated that Mr. Kleve relied upon [appellants] to advise him as to the amount of coverage desired for the tools and equipment. [Appellants] have not provided any reliable, probative evidence disputing that assertion. Furthermore, [Appellants] have not disputed that Mr. Kleve would provide them with a list of what was covered and the amount of coverage."

{¶48} Because appellants did not contest the issue, the trial court correctly determined there was nothing to dispute appellees' position. A fundamental rule of appellate review is that an appellate court will not consider an alleged error that a party was aware of but failed to argue before the trial court. *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 210 (1982). Hence, a party waives the right to contest an issue on appeal if the issue was manifest prior to or at the time of the proceedings and the party failed to raise it at the appropriate time in the trial court. *Little Forest Med. Ctr. Of Akron v. Ohio Civ.Rights Comm.*, 91 Ohio App.3d 76, 80 (9th Dist.1993). Moreover, this principle extends to issues not addressed in a summary judgment exercise; to wit, a party who fails to respond to an adverse party's motion for summary judgment may not raise issues on appeal that should have been raised in a response to the motion for summary judgment. *Calabris v. Pfieffer*, 11th Dist. Ashtabula No. 96-A-0038, 1997 Ohio

15

App. LEXIS 427, *10; *see also Haas v. Industrial Commn. Ohio*, 10th Dist. Franklin No. 99AP-475, 1999 Ohio App. LEXIS 6483, *5-*6. Appellants have therefore waived their final assigned error for sake of this appeal.

{¶49} Appellants' final assignment of error lacks merit.

{¶50} For the reasons discussed in this opinion, the judgment of the Geauga County Court of Common Pleas is affirmed in part, reversed in part, and remanded.


THOMAS R. WRIGHT, J., concurs,

COLLEEN MARY O'TOOLE, J., concurs in part and dissents in part with a Concurring/ Dissenting Opinion.

_____

COLLEEN MARY O'TOOLE, J., concurs in part and dissents in part with a Concurring/ Dissenting Opinion.

{¶51} I concur fully with the majority's well-reasoned holding regarding appellants' first two assignments of error. However, I find that appellant demonstrated there was a genuine issue of material fact regarding the existence of a fiduciary relationship from which a reasonable jury could find in favor of appellants. As such I dissent regarding the majority's finding on the third assignment of error. Additionally, I find that in the summary judgment proceedings, appellants did contest appellees' claims regarding the allegations of inadequate limits for appellants' equipment. Therefore I also dissent as to the majority's finding regarding the fourth assignment of error.

16

{¶52} When seeking summary judgment the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the non-moving party's claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). If the moving party meets its burden, then the non-moving party has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial. Civ.R. 56(E); *Dresher* at 293. "The inferences to be drawn from the underlying facts contained in the affidavits and other exhibits must be viewed in the light most favorable to the party opposing the motion [for summary judgment], and if when so viewed reasonable minds can come to differing conclusions the motion should be overruled." *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427, 433 (1981). And the Supreme Court of Ohio has noted that, as summary judgment terminates the litigation, it must be granted with caution. *Norris v. Ohio Std. Oil Co.*, 70 Ohio St.2d 1, 2-3 (1982).

{¶53} The Supreme Court of Ohio has defined the term "fiduciary relationship" as "'…one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust.'" *Stone v. Davis*, 66 Ohio St.2d 74, 78 (1981), quoting *In re Termination of Emp.*, 40 Ohio St.2d 107, 115 (1974). Determining what constitutes a fiduciary relationship is a question of fact dependent upon the circumstances in each case. *Taylor v. Shields*, 2d Dist. Montgomery No. 2163, 1951 Ohio App. LEXIS 753 (Dec. 7, 1951); *Cope v. Metropolitan Life Ins. Co.*, 82 Ohio St.3d 426, 437 (1998).

{¶54} Appellants provided several examples of how a relationship of "special confidence and trust" existed between them and Mr. Kleve. Among the factors appellants cite:

- The length of the relationship between the parties;

- The absence of any other insurance advisor for appellants;

- The difference in knowledge of insurance between the parties;

- That appellants always followed the insurance advice offered by Mr.Kleve;

- Mr. Kleve's unsolicited advice on the replacement cost of the building addition.

{¶55} Viewing this evidence in a light most favorable to appellants, there is sufficient information in the record to create a genuine issue of material fact regarding whether a fiduciary relationship existed between the parties. Thus, appellants' third assignment of error has merit.

{¶56} Regarding appellants' fourth assignment of error, a review of the briefs from the trial court demonstrates that appellants did contest appellees' claims regarding the allegations of inadequate limits for appellants' equipment. Appellees claim that appellants failed to address the argument raised in their summary judgment motion that as to appellants' allegations of liability arising from inadequate limits for scheduled and unscheduled equipment. Conversely, appellants claim that appellees did not move for summary judgment on appellants' breach of fiduciary duty claims. Neither are correct.

{¶57} Although appellants did not address appellees' arguments regarding the liability arising from inadequate limits for equipment in a separately-titled section of their memorandum in opposition to summary judgment, they nevertheless contested this

18

argument at several points.    Specifically, appellants argue in their memorandum in opposition that:

- They relied on Mr. Kleve to provide full coverage (pg. 3);

- They delivered lists of equipment for Kleve to provide coverage (pg. 4);

- Appellees failed to provide $41,000 of requested coverage (pg. 4);

- Appellants requested "full coverage" from Kleve. (pg. 5);

- Failure to provide full coverage resulted in liability for the difference (pg.12).

**{¶58}** Given that appellants did contest appellees' arguments relating to the allegations of liability arising from inadequate limits for scheduled and unscheduled equipment, they have not waived this issue on appeal.    Thus, appellants' fourth assignment of error has merit.

**{¶59}** I respectfully concur in part and dissent in part.