[Cite as *Green v. Zack*, 2019-Ohio-4944.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| THOMAS KERRY GREEN, | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellant | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, J. |
| -vs- | : | |
| | : | |
| MICHAELA SHEPHERD ZACK, | : | Case No. 2019 CA 0057 |
| | : | |
| Defendant | : | O P I N I O N |
| and | | |
| MICHAEL P. SHEPHERD, | | |
| Defendant-Appellee | | |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Richland County Court of Common Pleas, Case No. 2018CV0162 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT: | December 2, 2019 |

APPEARANCES:

For Plaintiff-Appellant

DAVID D. CARTO
Weldon, Huston & Keyser, L.L.P.
76 North Mulberry Street
Mansfield, Ohio 44902

For Defendant-Appellee

TODD M. ZIMMERMAN
DANIEL J. MATUSICKY
Rohrbachers Cron Manahan
Trimble & Zimmerman Co., L.P.A.
460 Polaris Parkway, Suite 175
Westerville, Ohio 43082

*Baldwin, J.*

{¶1} Plaintiff-appellant Thomas Kerry Green appeals from the May 23, 2019 Judgment Entry of the Richland County Court of Common Pleas granting the Motion for Summary Judgment filed by defendant-appellee Michael R. Shepherd.

### STATEMENT OF THE FACT AND CASE

{¶2} On March 13, 2016, appellant Thomas Kerry Green was bit by a large Great Dane while running recreationally along a public roadway known as Millsboro Road West in Richland County, Ohio. As he approached the house and property located at 3619 Millsboro Road West, a large Great Dane "came ripping off the porch" and attacked appellant, causing him to suffer severe lacerations, puncture wounds, loss of skin and muscle tissue, a compression fracture of his left tibial plateau and permanent scaring on his right forearm and left leg. Deposition of Thomas Kerry Green at 14-16, 36, 42-45.

{¶3} The dog which attacked appellant was owned and kept at the premises by Michaela Shepherd Zack (hereinafter "Zack") who is appellee's daughter. The premises is a single family home. Appellee is the owner of the premises and his daughter had been living there under a verbal lease since September of 2015. During her deposition, Zack testified that she paid appellee, who did not live at the property, $685.00 a month in rent and paid the utilities. Deposition of Michaela Shepherd Zack at 9. The two did not have a written lease. Appellee paid the real estate taxes, mortgage payments and insurance premiums pertaining to the property. Zack testified that her father would visit her approximately once a week.

{¶4} During his deposition, appellee testified that his daughter was buying the property on land contract. There was, however no written land contract between them.

He further testified that she told him that the Great Dane, named Albert, had been involved in two other reported incidents where he had bitten and injured other people. One incident was in November of 2015 and the other in December of 2015. On or about November 15, 2015, a bite report was made to the Richland County Dog Warden about Albert and Albert was determined to be a dangerous dog under R.C. Section 955.11(A)(1)(a)(i). Zack was ordered to keep Albert restrained in compliance with the requirements of R.C. 955.22(D). Zack then installed a fence on the property. During her deposition, Zack testified that she discussed the two incidents with appellee and that he was aware that the Dog Warden had ordered that Albert be enclosed on the property. After the November 2015 incident, Zack also was ordered to be muzzled while off the premises. After someone told appellee that Albert had been labeled a dangerous dog, appellee spoke with Zack and asked her about her plans. According to him, Zack told him that she had talked to the Dog Warden and was told that she needed to keep Albert restrained. Appellee testified that when he went over to the premises, Albert was on a chain that was staked and was muzzled.

{¶5} The following is an excerpt from appellee's deposition testimony:

{¶6} A: My concern was that the person on the phone had told me the dog had been labeled a dangerous dog. So I asked her [Zack] what her plans were about the dog, and she said that the dog warden – she either told me the dog warden had been out and talked to her or it was on the telephone - - I can't remember - - and told her what needed to be done if she was going to keep the dog.

That satisfied me.  I had no control over what she was going to do with the dog and all of this.  It was - - my name is on the house, but she's in charge.  She can knock out a wall if she wants to.

**{¶7}**   Q:  Were you concerned that, as the owner of the property, you wanted to make sure there wasn't something on the property that might cause harm to somebody else?

**{¶8}**   MR. ZIMMERMAN:  Objection.

**{¶9}**   A:  Something on the property?

**{¶10}** BY MR. CARTO:

**{¶11}** Q:  Right.

**{¶12}** A:  Meaning the dog?

**{¶13}** Q:  Yes.

**{¶14}** A:  That's a tough question.  When I got the phone call and they told me that the dog was labeled a dangerous dog, that's when I called Mik [Zack].  When Mik [Zack] told me that she had conversed with the dog warden that satisfied me that she was going to keep the dog.  She built a cyclone fence all around the backyard, and the dogs were staying in that many hours a day.  They were in there or in the house.  The only times, to my knowledge, that the dog was outside on the chain is when Mikki [Zack] was outside with the dog.  She never put the dog outside and then went for a ride or something.

**{¶15}** Q:  So as the owner of the property, you wanted to make sure, if this was indeed a dangerous dog, that it was properly secured?...

**{¶16}** MR. ZIMMERMAN:  You can answer. If you know the answer.

**{¶17}** A:  Okay.  What was the question?

**{¶18}** BY MR. CARTO:

**{¶19}** Q: I knew that was going to be a problem. I asked it in so many different ways. I'll try to rephrase it.

You were concerned when you were told that there may be a dangerous dog on the property you owned that you wanted to see what Michaela [Zak] was going to do with the dog, correct?

**{¶20}** A: Right.

**{¶21}** Q: She indicated to you that with the dog warden's advice, she would secure the dog in the manners that you've described?

**{¶22}** A: Yes.

**{¶23}** Q: And that satisfied your concern?

**{¶24}** A: That - - yes.

**{¶25}** Q: So I take it that if she had not indicated that she was going to take any precautions to secure a dangerous dog, that you would not have been satisfied?

**{¶26}** A: I would not have been.

**{¶27}** Q: As the owner of the property, did you feel like you could tell her to divest ownership of the dog if you weren't satisfied with the precautions she was taking?

**{¶28}** MR. ZIMMERMAN: Objection. Go ahead.

**{¶29}** A: The best ownership?

**{¶30}** BY MR. CARTO:

**{¶31}** Q: Divest ownership, meaning she could either destroy, or give away, the dog if you weren't satisfied with the precautions she was taking.

**{¶32}** A: Yeah. At that point, the only thing I was going by is that the dog warden had told her what to do to keep the dog.

**{¶33}** Appellee's Deposition at 22-25.

**{¶34}** Zack testified that after the two incidents, appellee did not advise her to remove Albert from the property or to euthanize him. According to Zack, on March 13, 2016, she had allowed Albert to be outside in front of the house. She testified that while he was muzzled, the muzzle was damaged and that at the time, he was on a running cable tethered to the front door ramp which she had removed from the backyard. Albert broken the cable and discarded the muzzle before attacking appellant. As a result of the attack on appellant, Zack was charged with and pled guilty to violating R.C. 955.22(D)(1) for failing to securely confine a dangerous dog while on the premises and (2) for failing to securely restrain and muzzle a dangerous dog while off the premises. Shortly after the attack on appellant, Albert was euthanized.

**{¶35}** Zack testified that she was in charge of the premises and decided who could and who could not come to her house. She also controlled what her son could and could not do while on the property. While she is in charge of maintaining the property, she testified that she would not make any permanent modifications to the property or structure without informing her father. She further testified that if her father had told her that he wanted her to get the dog off of the property, she would have complied. The two, however, never had such a discussion.

**{¶36}** On March 5, 2018, appellant filed a personal injury complaint against appellee and Zack. Appellant alleged negligence, recklessness and one count of strict

liability against Zack and negligence against appellee. Appellee filed an answer on April 4, 2018 and Zack, with leave of court, filed an answer on June 5, 2018.

{¶37} Appellee filed a Motion for Summary Judgment on January 17, 2019. Zack filed a memorandum in opposition on February 27, 2019 and appellant filed a memorandum in opposition on February 28, 2019. On April 12, 2019, appellee filed a reply brief.

{¶38} As memorialized in a Judgment Entry filed on May 23, 2019, the trial court granted appellee's Motion for Summary Judgment, holding that "reasonable minds could only reach but one conclusion and that is that [appellee] did not maintain possession and control over the premises in question" and, therefore, could not be held liable as a harborer of Albert under either R.C. 955.22 or common law.

{¶39} Appellant now raises the following assignment of error on appeal:

{¶40} "I. THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE, MICHAEL P. SHEPHERD UPON THE GROUNDS THAT THERE WAS EVIDENCE IN THE RECORD THAT HE WAS A HARBORER OF THE DANGEROUS DOG WHICH ATTACKED PLAINTIFF-APPELLANT."

I

{¶41} Appellant, in his sole assignment of error, argues that the trial court erred in granting summary judgment in favor of appellee. We disagree.

{¶42} We review cases involving a grant of summary judgment using a de novo standard of review. *Bonacorsi v. Wheeling & Lake Erie Ry. Co.,* 95 Ohio St.3d 314, 2002-Ohio-2220, 767 N.E.2d 707, ¶ 24. A de novo review requires an independent review of

the trial court's decision without any deference to the trial court's determination. *Brown v. Scioto Cty. Bd. of Commrs.,* 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993) as cited in *State v. Standen,* 9th Dist., 173 Ohio App.3d 324, 2007-Ohio-5477, 878 N.E.2d 657, ¶ 7. "Thus, viewing the pleadings in the light most favorable to the [appellant], we must determine whether [appellee] was entitled to judgment as a matter of law." Civ.R. 56(C). *Troyer v. Janis,* 132 Ohio St.3d 229, 2012-Ohio-2406, 971 N.E.2d 862, ¶ 6."[w]e afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate." *Tornado Techs., Inc. v. Quality Control Inspection, Inc.,* 2012-Ohio-3451, 977 N.E.2d 122, ¶ 13 (8ᵗʰ Dist.).

**{¶43}** In Ohio, the two bases for recovery for injuries sustained as a result of a dog bite are common law and statutory**:**

> [I]n a common law action for bodily injuries caused by a dog, a plaintiff must show that (1) the defendant owned or harbored the dog, (2) the dog was vicious, (3) the defendant knew of the dog's viciousness, and (4) the dog was kept in a negligent manner after the keeper knew of its viciousness.
>
> * *
>
> [I]n an action for damages under R.C. 955.28, the plaintiff must prove (1) ownership or keepership [or harborship] of the dog, (2) that the dog's actions were the proximate cause of the injury, and (3) the damages. * * * [T]he defendant's knowledge of the dog's viciousness and the defendant's negligence in keeping the dog are irrelevant in a statutory action.

*Beckett v. Warren*, 124 Ohio St.3d 256, 2010-Ohio-4, 921 N.E.2d 624, ¶ 7-11.

{¶44} There is no dispute that appellee was neither the owner nor keeper of Albert. The question thus becomes whether appellee was a harborer of the dog. Appellant argues that there is a genuine issue of material fact as to whether or not appellee was a "harborer" of Albert.

{¶45} A "harborer" is someone who has possession and control of the premises where the dog lives and silently acquiesces to the dog's presence. *Bowman v. Scott,* 9th Dist. Summit App. No. 21568, 2003–Ohio–7182; *Thompson v. Irvin*, 12th Dist. Butler App. No. CA97–05–101, 1997 WL 66079 (2nd Dist. 1997). The hallmark of control is the ability to advent or to exclude others from the property. *Flint v. Holbrook,* 80 Ohio App.3d 21, 608 N.E.2d 809 (1992). In determining whether a defendant is a harborer of a dog, the central focus of a court's analysis "shifts from possession and control over the dog to possession and control of the premises where the dog lives." *Flint, supra at* 25.

{¶46} Generally speaking, a landlord will not be held responsible for injury caused by a tenant's dog so long as the tenant is in exclusive possession and control of the premises. Absent a contrary agreement, a lease agreement transfers both the possession and the control of the premises to the tenant. *Burrell v. Iwenofu,* 8th Dist. Cuyahoga App. No. 81230, 2003–Ohio–1158; *Hilty v. Topaz,* 10th Dist. Franklin App. No. 04AP–13, 2004–Ohio–4859. See *Parker v. Sutton* , 72 Ohio App.3d 296, 299, 594 N.E.2d 659 (6th Dist. 1991); *Hurst v. Manalo* (Jul. 29, 1999), Cuyahoga App. No. 74270.

{¶47} Regarding the relationship between a landlord and tenant, "it is well-established that a lease transfers both possession and control of the leased premises to the tenant." *Richeson v. Leist,* 12th Dist. Warren No. CA2006–11–138, 2007–Ohio–3610, at ¶ 13, citing *Flint,* 80 Ohio App.3d at 25. Accordingly, "[i]f the tenant's dog is confined

only to the tenant's premises, the landlord cannot be said to have possession and control of the premises on which the dog is kept." *Godsey v. Franz,* 6th Dist. Williams No. 91 WM000008, 1992 WL 48532 at *4 (Mar. 13, 1992). For a landlord to be liable as a harborer for injuries inflicted by a tenant's dog, "the plaintiff must prove that the landlord permitted or acquiesced in the tenant's dog being kept in the common areas or areas shared by the landlord and tenant." *Stuperv. Young,* 9th Dist. Summit No. 20900, 2002–Ohio–2327, at ¶ 13, citing *Godsey, supra* 4). "[If] the leased property at issue consists of a single-family residence situated on a 'normal-sized city lot, there is a presumption that the tenants possessed and controlled the *entire* property.' " *Richeson,* 2007–Ohio–3610, at ¶ 13, quoting *Engwert–Loyd v. Ramirez,* 6th Lucas Dist. No. L–06–1084, 2006–Ohio–5468, at ¶ 11.

**{¶48}** In the instant case, there was evidence that Zack leased the property from appellee, who owned the property, and appellee was her landlord. She made all of the utility payments while he, as landlord, paid the real estate taxes, mortgage payments and insurance premiums. Appellee ceased living at the premises in question in 2014 before Zack moved in and began paying rent and did not share any portions of the property with her. Moreover, appellee never retained any right to possess or control any portions of the leased premises and did not share any common areas of the property with Zack. During her deposition, Zack testified that she rented the entire property from appellee and decided who could and could not come to the premises and controlled what her son could or could not do on the property. Appellee, when asked, was unable to recall whether or not Zack allowed her boyfriend to stay at the house and did not know whether or not Zack's children stayed at her home regularly. Zack further testified that she decided what

dogs could live at her house. Appellee testified during his deposition that Zack was in charge of the house and that "[s]he can knockout a wall if she wants to." Appellee's Deposition at 22.

{¶49} Based on the forgoing, we concur with the trial court that "reasonable minds could only reach but one conclusion and that is that [appellee] did not maintain possession and control over the premises in question" and, therefore, could not be held liable as a harborer of Albert under either R.C. 955.22 or common law. We find, therefore, that the trial court did not err in granting summary judgment in favor of appellee.

{¶50} Appellant's sole assignment of error is, therefore overruled.

{¶51} Accordingly, the judgment of the Richland County Court of Common Pleas is affirmed.

By: Baldwin, J.

Gwin, P.J. and

Wise, Earle, J. concur.