[Cite as *Maddox v. E. Cleveland*, 2012-Ohio-9.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96390**

## SARAH J. MADDOX, ET AL.

PLAINTIFFS-APPELLANTS

vs.

## CITY OF EAST CLEVELAND, ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
**AFFIRMED**

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-658625

**BEFORE:** Stewart, P.J., S. Gallagher, J., and Rocco, J.

**RELEASED AND JOURNALIZED:** January 5, 2012

**ATTORNEY FOR APPELLANTS**

Gregory J. Moore
Stafford & Stafford Co., L.P.A.
55 Erieview Plaza, 5th Floor
Cleveland, OH    44114


**ATTORNEYS FOR APPELLEES**

Ronald K. Riley
Deborah Gooden Blade
City of East Cleveland Law Department
14340 Euclid Avenue
Cleveland, OH    44112


MELODY J. STEWART, P.J.:

{¶ 1}   Plaintiff-appellant Sarah Maddox, individually, as the administratrix of the estate of her deceased daughter, LaDora Anderson, and as the legal guardian of Anderson's surviving children, brought this negligence action against defendant-appellee city of East Cleveland and the city of East Cleveland Police Department ("the city"), alleging that the police department failed to protect Anderson and otherwise investigate complaints she made about Jeffrey Sears, a man who shot and killed Anderson before taking his own life.  Maddox alleged that Anderson repeatedly reported to the police threats that Sears made against Anderson, but that the police failed to prevent Anderson's subsequent murder.  The city claimed in a motion for summary judgment that it was immune from suit under the Political Subdivision Tort Liability Act.  The court agreed

and granted summary judgment. Maddox appeals, arguing that the court should not have granted summary judgment and that she was entitled to judgment as a sanction in light of numerous discovery violations committed by the city.

I

{¶ 2} To the extent the material facts are in dispute, we set them forth most favorably to Maddox, as required by Civ.R. 56(C).

{¶ 3} Sears and Anderson had been in a relationship that apparently ended in October 2003 with his arrest for domestic violence. The charges stemmed from threatening messages left on Anderson's voicemail. Apparently frustrated by Anderson's refusal to allow him to see his children, Sears stated: "I am losing my patience. I'm tired of this shit. Let me see my kids or I'm going to kill someone. *** I'll kidnap them." In a second message, Sears stated: "I'll kill everyone. You have until tomorrow or I'll kill someone. I'm coming for my kids." Sears was later found guilty of misdemeanor domestic violence and sentenced to 90 days in jail. He was released from jail on March 3, 2004.

{¶ 4} On March 5, 2004, Anderson complained that her car had been shot at two days earlier while parked at her house. She told the police that she immediately suspected Sears as the culprit — he had been calling her repeatedly since his release in the futile hope of rekindling the relationship. There was no evidence, however, to show that Anderson personally witnessed Sears shooting her car. Her police statement showed that she had been standing in her kitchen when she heard the shots fired, so she did not

see the shooter in the act. Morever, a police report of the shooting quoted Anderson as saying that she did not realize that her car had been shot until the following day because she "was not that concerned due to hearing shots often in the area that she lives." Anderson's police statement also related that Maddox learned from Sears that he was carrying a gun following his release from jail and "he's going to kill [Maddox]."

{¶ 5} The police arrested Sears on March 9, 2004 and apparently charged him with a violation of the probation ordered in the 2003 domestic violence conviction. The East Cleveland Municipal Court conducted a hearing on the charge and determined the "allegations not proven of probation violation." The municipal court issued a no-contact order and referred the matter to the probation department. Sears was released without notice to Anderson. On March 14, 2004, Sears killed Anderson and committed suicide.

II

{¶ 6} We first address Maddox's claim that the court erred by refusing to impose sanctions on the city for its repeated violations of discovery orders. She maintains that she needed to conduct depositions of "key witnesses" and obtain other evidence from the city, but that the city continuously failed to comply with discovery requests, even though the court had issued an order compelling the city to produce the requested discovery.

{¶ 7} The court has broad discretion over the management of discovery and the imposition of sanctions for a violation of a discovery order. *State ex rel. Daggett v. Gessaman* (1973), 34 Ohio St.2d 55, 295 N.E.2d 659, paragraph one of the syllabus. As a reviewing court, we can only reverse orders made in the management of discovery for

an abuse of discretion. *Nakoff v. Fairview Gen. Hosp.* (1996), 75 Ohio St.3d 254, 1996-Ohio-159, 662 N.E.2d 1, syllabus. Though the Rules of Civil Procedure give the court significant leeway in dealing with discovery issues, the court should inquire into the reason for the discovery violation before imposing a sanction. *Lakewood v. Papadelis* (1987), 32 Ohio St.3d 1, 511 N.E.2d 1138, paragraph two of the syllabus. If the court does choose to impose a sanction, it should impose the least severe sanction that is consistent with the purposes of the discovery rules. Id.

{¶ 8} This case was originally filed in March 2005. The docket shows two different orders indicating "discovery in progress." Maddox voluntarily dismissed the city without prejudice in March 2006. Maddox refiled the complaint against the city in May 2008. The city sought summary judgment in October 2008. Somewhat curiously, Maddox requested a 30-day extension of time in which to file a brief in opposition to the motion for summary judgment and a 60-day extension of the discovery deadline. As the deadline for responding to the motion for summary judgment loomed, Maddox sought "clarification" of that deadline, explaining that she had actually intended to seek a 60-day extension on the response time. The court construed this as a request for an additional 30-day extension of the response deadline and granted it. It set a new response deadline of December 6, 2008 and also ordered that all remaining discovery was to be complete by that same day. On December 8, 2008, Maddox sought an additional 60-day extension of discovery.

**{¶ 9}** On December 16, 2008, Maddox received leave to file an amended complaint for the sole purpose of adding her as the administratrix of Anderson's estate (Maddox originally brought suit in her individual capacity). The city refiled its motion for summary judgment and the court immediately granted it without giving Maddox a chance to respond. Maddox appealed and we reversed summary judgment, finding that the court should have given Maddox 30 days in which to respond to the refiled motion for summary judgment. See *Maddox v. E. Cleveland*, 8th Dist. No. 92673, 2009-Ohio-6308.

**{¶ 10}** On remand, the court established a new discovery deadline of March 31, 2010 and ordered dispositive motions to be filed by April 30, 2010. On March 31, 2010, Maddox sought an extension of the discovery deadline solely for the purpose of taking depositions of the city's "representatives." Maddox also sought sanctions from the city. The court extended the discovery deadline to May 22, 2010 and denied sanctions. The city filed its motion for summary judgment on May 17, 2010. Maddox again sought an extension of the discovery deadline. The court granted another extension to July 30, 2010 and yet another extension, on Maddox's motion, to October 1, 2010.

**{¶ 11}** In September 2010, Maddox deposed certain city employees. On September 29, 2010, she asked for an extension of the discovery deadline. The court denied the motion. Despite being denied an extension of the discovery deadline, Maddox continued to depose witnesses and on October 29, 2010, filed a brief in opposition to the city's motion for summary judgment. The court granted summary judgment on January 10, 2011.

{¶ 12} As the history shows, this case was on the court's docket for several years during which Maddox received many extensions of the discovery deadlines. Even though the case had been originally filed in 2005, Maddox did not specifically name the seven persons whom she wished to depose until March 2010 (she had previously referred only to city "representatives"), and she did not actually subpoena those seven witnesses for deposition until September 2010. Two of those witnesses were retired police officers whose current living addresses were no longer on file with the city. A third person was an emergency medical technician who was no longer employed by the city.

{¶ 13} Once notices of depositions were served, there were some issues setting the depositions. Two depositions had to be cancelled because the deponents were unavailable after being sent on an emergency call and another cancelled because of a family emergency that made the city's attorney unavailable. But these short delays were trifling when compared to the amount of time that elapsed from 2005 when Maddox first filed her complaint and engaged in discovery. It is inconceivable that discovery could not have been completed at some point during the years this case had been active. Maddox's current pleas that the city engaged in "gamesmanship" by refusing to provide discovery are unavailing because she knew the names of all seven persons that she wished to depose in 2005. Although we wish to promote mutual cooperation in completing discovery without the court's involvement, the court has no obligation to compel discovery when a party has not yet subpoened witnesses for deposition. By waiting until 2010 to subpoena witnesses for depositions, Maddox lost all credibility in claiming that

the court abused its discretion by not finding that the city was solely responsible for delays in discovery.

{¶ 14} We thus find that the court did not abuse its discretion by refusing to extend the discovery deadline. Maddox received an ample number of extensions in which to complete discovery. We also see nothing in the record that would indicate that the city proceeded in bad faith, so it follows that the court likewise did not err by refusing to impose sanctions on the city.

III

{¶ 15} We next consider the substantive assignment of error, that the court erred by granting the city summary judgment on grounds of political subdivision immunity.

{¶ 16} Civ.R. 56(C) states that summary judgment may issue when there are no genuine issues of material fact and reasonable minds could find that the moving party is entitled to judgment as a matter of law. We address questions of sovereign immunity as a matter of law, *Conley v. Shearer*, 64 Ohio St.3d 284, 292, 1992-Ohio-133, 595 N.E.2d 862, so they are particularly apt for resolution by way of summary judgment pursuant to Civ.R. 56.

{¶ 17} R.C. Chapter 2744 establishes a three-tiered analysis for reviewing claims of political-subdivision immunity. *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, ¶7. For purposes of R.C. Chapter 2744, the functions of political subdivisions are classified as either governmental functions or proprietary functions. In the first tier of the analysis, we determine if the allegedly tortious act

stemmed from a governmental or proprietary function under R.C. 2744.02(A)(1) because "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." Id. In the second tier, we consider whether any of the affirmative defenses listed in R.C. 2744.03 exist to defeat immunity. Id. at ¶8. If there are affirmative defenses available, the third tier requires us to determine whether any of the defenses in R.C. 2744.03 provide the political subdivision a defense against liability. Id. at ¶9.

{¶ 18} The operation of a police department is a governmental function, see R.C. 2744.01(C)(2)(a), so the city is presumptively immune from suit.

{¶ 19} In the second tier of the analysis, Maddox argues that R.C. 2744.02(B)(2) and (5) apply. R.C. 2744.02(B)(2) provides a defense for "death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." As earlier noted, police protection services are a governmental function and R.C. 2744.02(B)(2) applies only to proprietary functions.

{¶ 20} Citing to *Bader v. Cleveland* (Feb. 18, 1982), Cuyahoga App. No. 44118, Maddox argues that the governmental function of police protection in this case morphed into a proprietary function. In *Bader*, we held that the towing and impoundment of a vehicle was a governmental function of the police department, but the subsequent holding

and storage of that vehicle at the police impound lot, after notice to the owners, could become a proprietary function after police contact with the vehicle ended. Apart from citing to *Bader*, Maddox offers no argument to show how the police involvement in this case terminated in any respect that would convert the governmental function into a proprietary function. At all events, Maddox claimed to have sought police protection in a manner that was only consistent with the city's governmental police function. There is no evidence of any kind to show how a governmental function turned into a proprietary one.

{¶ 21} Maddox also argues that a common law exception to immunity applies by virtue of the special relationship. In the earlier appeal of this action, we rejected a similar argument made in support of her allegation that the county probation department lacked immunity because of its special relationship to her: "Finally, insofar as plaintiffs rely upon the 'special duty rule' to establish liability, 'the special-relationship exception is not codified in R.C. 2744.02(B), and it is therefore not an independent exception to a political subdivision's general immunity from liability.'" *Maddox*, at 34, quoting *Rankin v. Cuyahoga Cty. Dept. of Children & Family Servs.*, 118 Ohio St.3d 392, 2008-Ohio-2567, 889 N.E.2d 521. That rationale applies with equal force in this appeal to bar assertion of that special relationship exception to the police as well.

{¶ 22} Lastly, Maddox argues that summary judgment was inappropriate because the city failed to support its motion with any evidentiary materials. While the movant has the initial burden of setting forth specific facts that demonstrate his or her entitlement

to summary judgment, *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107, 662 N.E.2d 264, the facts set forth by the city were essentially an adoption of the allegations of the complaint insofar as they related to the first and second tiers of the immunity analysis. These facts plainly showed that the police were engaged in a governmental function to which immunity applied, that there were no defenses to immunity so the city was entitled to judgment as a matter of law. To the extent that Maddox argued issues of fact, those facts went to the third tier of the analysis to detail her opinion why the city's employees acted in a willful, wanton, and malicious way by failing to detain Sears in order to protect Anderson. These arguments were rendered moot by Maddox's failure to establish the second tier of the analysis. We thus conclude as a matter of law that Maddox failed to set forth facts that would overcome the city's immunity from suit and that the court did not err by granting summary judgment.

IV

{¶ 23} Finally, Maddox argues that the court erred by refusing her request to issue findings of fact and conclusions of law. We summarily overrule this assignment of error because Civ.R. 52 states that "[f]indings of fact and conclusions of law required by this rule and by Rule 41(B)(2) are unnecessary upon all other motions including those pursuant to Rule 12, Rule 55 and Rule 56." See, also, *Walker v. Karp* (Mar. 19, 2002), 8th Dist. No. 80773; *State ex rel. Hawley v. Corrigan*, 8th Dist. No. 80055, 2001-Ohio-4155.

Judgment affirmed.

It is ordered that appellees recover of appellants their costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MELODY J. STEWART, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
KENNETH A. ROCCO, J., CONCUR