[Cite as *Priore v. State Farm Fire & Cas. Co.*, 2014-Ohio-696.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 99692

---

## MICHAEL A. PRIORE

PLAINTIFF-APPELLANT

vs.

## STATE FARM FIRE & CASUALTY CO., ET AL.

DEFENDANTS-APPELLEES

---

### JUDGMENT:
### AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-759299

**BEFORE:** Rocco J., Celebrezze, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** February 27, 2014

**ATTORNEYS FOR APPELLANT**

L. Rich Humpherys
Christensen & Jensen, P.C.
15 W. South Temple
Suite 800
Salt Lake City, UT   84101

David M. Dvorin
Law Office of David M. Dvorin
Pepper Pike Place, Suite 300
30195 Chagrin Boulevard
Pepper Pike, OH 44124

**ATTORNEYS FOR APPELLEE**

Gregory A. Harrison
Elizabeth M. Shaffer
Dinsmore & Shohl, L.L.P.
1900 Chemed Center
255 East Fifth Street
Cincinnati, OH 45202

KENNETH A. ROCCO, J.:

**{¶1}** Plaintiff-appellant Michael A. Priore appeals from the trial court's order granting summary judgment in favor of State Farm Fire and Casualty Company ("State Farm"). Because the trial court correctly determined that State Farm was entitled to a judgment as a matter of law, we affirm.

**{¶2}** MPDS Memphis, Ltd. ("MPDS Memphis") is a limited liability corporation that was formed for the specific purpose of owning a 120-unit apartment building known as the Emerald Overlook Apartments ("the Property").[1] The Property is owned by MPDS Memphis. Priore is a 50 percent owner and the managing member of MPDS Memphis. A mortgage on the Property was issued in the amount of 17 million and was secured by the Property. To ensure that MPDS Memphis could obtain financing from the bank, Priore personally guaranteed the loan making him personally liable to the lender.

**{¶3}** Beginning in 2000, State Farm insurance agent, Rocky Robinson, began serving as an insurance agent for properties in which Priore had some involvement. In 2004, Robinson procured the insurance policy that is the subject of the instant case ("the Policy"). The Named Insured on the Declarations Page of the Policy lists MPDS

---

[1] Because this appeal stems from an order granting a motion for summary judgment, we recite the facts in the light most favorable to Priore, because he was the nonmoving party. *See Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, 821 N.E.2d 564, ¶ 6. We address the facts in more detail in our discussion of the legal claims.

Memphis. Section I of the Policy governs "Property Coverages." Section II governs "Comprehensive Business Liability."

**{¶4}** On February 29, 2008, the roof on the Property failed due to excessive weight of accumulating snow and ice. As a result, some of the apartment units flooded. On March 1, 2008, MPDS Memphis filed an insurance claim with State Farm seeking coverage for the roof, for internal property damage, and for lost rental income.

**{¶5}** Dissatisfied with State Farm's handling of its insurance claim, MPDS Memphis and its property manager, Windsor Realty and Management, Inc., filed suit against State Farm on February 19, 2010, in the Cuyahoga County Court of Common Pleas. The complaint alleged breach of contract, breach of the covenant of good faith, breach of fiduciary duty, negligent misrepresentation, and simple negligence. State Farm removed the case to federal court on the basis of diversity jurisdiction ("the federal case").

**{¶6}** After the case was removed to federal district court, Priore moved to intervene and join with MPDS Memphis as a party plaintiff. State Farm opposed the motion, arguing that Priore lacked standing. Priore withdrew his motion to intervene in the federal case and, on July 11, 2011, he filed the lawsuit that is the subject of this appeal.

**{¶7}** In the federal case, the district court granted summary judgment to State Farm on all claims. MPDS Memphis appealed to the Sixth Circuit arguing that the district court erred in granting summary judgment on its claims for breach of contract and

breach of the covenant of good faith. The Sixth Circuit affirmed the district court on MPDS's bad faith claim. *MPDS Memphis, Ltd. v. State Farm Fire & Cas. Co.*, 6th Cir. No. 11-4416, 2013 U.S. App. LEXIS 8501 (Apr. 24, 2013). After determining that the record was too muddled on the breach of contract claim, the Sixth Circuit reversed summary judgment on that claim and instructed the district court to afford "MPDS Memphis an opportunity to present its remaining breach of contract claims and then determine whether these claims are supported by evidence sufficient to withstand summary judgment." *Id.* at *14.

{¶8} In the instant suit, Priore's complaint named State Farm and Robinson as defendants and set forth the following causes of action: (1) a claim for declaratory relief asking the trial court to set forth the rights and obligations of the parties under the Policy; (2) a claim for reformation of the Policy, so as to include Priore as a Named Insured on the Policy along with MPDS; (3) a bad faith claim against State Farm; (4) a claim for breach of contract against State Farm; (5) a negligence claim against Robinson; and (6) a vicarious liability claim against State Farm. All of Priore's causes of action stemmed from State Farm's handling of the insurance claim that was filed after the roof collapsed on the Property. Priore's suit was filed on his own behalf, and not on behalf of MPDS or any other individual.

{¶9} State Farm filed a motion for summary judgment on all of Priore's claims. The trial court granted State Farm's motion, and Priore now appeals, setting forth six assignments of error for our review:

I. The trial court erred when it failed to provide any analysis or reasoning for its holding.

II. The trial court erred in granting summary judgment on Priore's reformation claim because questions of material fact remain regarding whether the Policy could be reformed.

III. The trial court erred in granting summary judgment on Priore's negligence claim because issues of fact exist as to whether State Farm's agent, Robinson, breached his duty of care.

IV. The trial court erred when it held that Priore's failure to read the Policy precluded his reformation and negligence claim.

V. The trial court erred when it held that Priore's breach of contract and bad faith claims are barred by principles of res judicata.

VI. The trial court erred when it held that Priore did not qualify as a Named Insured under the Policy.

{¶10} Because this case involves an order granting summary judgment, the de novo standard of review applies. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Applying Civ.R. 56(C), we affirm a trial court's order granting summary judgment if (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, 821 N.E.2d 564, ¶ 6.

{¶11} In the instant case, the trial court issued an order granting summary judgment to State Farm, but it did not provide an accompanying opinion setting forth its

reasoning. In his first assignment of error, Priore argues that the trial court abused its discretion through its failure to provide analysis in support of its order. We disagree. "[I]t is well settled in Ohio that a trial court is not required to issue a written opinion containing findings of fact and conclusions of law when ruling on a motion for summary judgment." *Solomon v. Harwood*, 8th Dist. Cuyahoga No. 96256, 2011-Ohio-5268, ¶ 61. *See also Maddox v. E. Cleveland*, 8th Dist. Cuyahoga No. 96390, 2012-Ohio-9, ¶ 23 ("Civ.R. 52 states that '[f]indings of fact and conclusions of law required by this rule and by Rule 41(B)(2) are unnecessary upon all other motions including those pursuant to Rule 12, Rule 55 and Rule 56'").

{¶12} Priore asserts that, notwithstanding the Civil Rules and our case law, a trial court must "explain" why no genuine issues of material fact are in dispute that would prevent the moving party from obtaining judgment as a matter of law. (Reply Br. at 1.) But such an explanation would necessarily require the trial court to issue conclusions of law, because "[a] material fact depends on the substantive law of the claim being litigated." *Burkes v. Stidham*, 107 Ohio App.3d 363, 371, 668 N.E.2d 982 (8th Dist.1995), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202, (1986). Because Priore's argument runs afoul of well-settled law, we overrule the first assignment of error. For ease of discussion, we consider the remaining assignments of error as they pertain to each cause of action set forth in Priore's complaint.

*Declaratory Judgment*

**{¶13}** In his sixth assignment of error, Priore argues that the trial court erred in determining that Priore did not qualify as a named insured under the Policy. For the reasons that follow, we overrule the assignment of error.

**{¶14}** A declaratory judgment action enables a court to declare the rights, status, and other legal relations of the parties. *Spaeth v. State Auto. Mut. Ins. Co.*, 8th Dist. Cuyahoga No. 97715, 2012-Ohio-3813, ¶ 12, citing Civ.R. 57; R.C. Chapter 2721. As was done in this case, an insured can file a declaratory judgment action to establish an insurer's obligations where there is a controversy between the insurer and insured as to the fact or extent of liability under a policy. *See id.*

**{¶15}** "An insurance policy is a contract." *Westfield v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 9. When interpreting an insurance contract, the court must honor the intent of the parties. *Id.* at ¶ 11. A court presumes that the parties' intent is reflected in the language that is found in the policy. *Id.* The court's inquiry begins and ends by looking to "the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy." *Id.* If the court determines that the language in the policy is clear, it "may look no further than the writing itself to find the intent of the parties." *Id.* If the language is clear, then there are no genuine issues of material fact to be determined, and the trial court should order summary judgment. *See Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978).

**{¶16}** All parties agree that the insurance claim in this case is governed by the Property Coverages section of the Policy. By granting summary judgment in favor of State Farm on the declaratory judgment action, the trial court necessarily determined that Priore was not insured under the Property Coverages section of the Policy. On appeal, Priore argues that the trial court erred in granting summary judgment to State Farm because the Policy is ambiguous as to whether he was covered under the Property Coverages section of the Policy.

**{¶17}** Our independent review of the Policy leads us to conclude that the Policy is clear and that Priore is not insured under the Property Coverages section of the Policy. The general Definitions section at the beginning of the Policy provides that "the words 'you' and 'your' refer to 'the Named Insured shown in the Declarations and any other person or organization qualifying as a Named Insured under this Policy." The Declarations page lists only MPDS Memphis as the Named Insured. The Definitions section does not set forth how to identify a "person or organization qualifying as a Named Insured under this Policy."

**{¶18}** The Property Coverages section likewise makes no mention of "person[s] or organization[s] qualifying as a Named Insured under this Policy." While the Property Coverages section sets forth which losses are covered and which losses are not covered, it does not set forth who is covered under this section of the Policy.

**{¶19}** In contrast, the Comprehensive Business Liability section includes an extensive subsection entitled "Designation of Insured" that explains "Who Is An

Insured." This subsection expands on the definition of an "insured" to include certain partners or members of organizations. Paragraph 4 of this subsection ("Paragraph 4") provides that the following is also an insured under this section:

> Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest will qualify as a Named Insured if there is no other similar insurance available to that organization.

This is the only place in the Policy that explains what it means to be a "person or organization qualifying as a Named Insured under this Policy."

{¶20} Having reviewed the language of the Policy, we turn to the question of who is covered under the entire Policy. As a Named Insured on the Declarations Page, MPDS Memphis is covered under the entire Policy. According to the Definitions section, if any other entity "qualifies as a Named Insured," then that entity is also covered under the entire Policy. The only manner in which one can qualify as a Named Insured is set forth above in Paragraph 4. Priore is obviously not an organization newly acquired or formed by MPDS. Accordingly, Priore does not qualify as a Named Insured. Because Priore is not a Named Insured and does not qualify as a Named Insured, he is not covered under the entire Policy.

{¶21} We next turn to the Property Coverages section to determine whether Priore is insured under this part of the Policy. We easily conclude that he is not covered here. Because the Property Coverages section of the Policy section does expand coverage to additional insureds, it follows that only a Named Insured or one "qualifying as a Named

Insured" is covered under this section of the Policy. Priore is, therefore, not covered under the Property Coverages section of the Policy.

{¶22} Although the Comprehensive Business Liability section expands coverage to additional persons and entities, such as officers and directors, these additional persons and entities are not Named Insureds nor do they "qualify as a Named Insured."[2] Accordingly, these additional insureds are covered only under the Comprehensive Business Liability section of the Policy. Both parties agree that Priore does qualify for coverage under this section. But this does not help Priore's position because the insurance claim that is at the heart of the litigation falls under the Property Coverages section of the Policy.

{¶23} To get around this problem, Priore argues that the Policy is ambiguous and that one plausible interpretation is that any individual or entity that is listed as an insured under the Comprehensive Business Liability section also "qualifies as a Named Insured." For the aforementioned reasons, we reject Priore's argument.

{¶24} Because the plain and ordinary meaning of the Policy demonstrates that Priore is not covered under the Property Coverages section of the Policy, the trial court correctly granted summary judgment in favor of State Farm on the declaratory judgment action. We overrule Priore's sixth assignment of error.

### *Reformation*

---

[2]But, as earlier mentioned, Paragraph 4 of the Comprehensive Business Liability section does describe the one instance of an entity that would "qualify as a Named Insured."

{¶25} Priore argues in the alternative that if he is not covered under the Property Coverages section of the Policy, then the Policy should be reformed in such a way so that he is covered under that section of the Policy. To that end, Priore's complaint included a claim for reformation. By granting State Farm's motion for summary judgment, the trial court necessarily rejected the reformation claim. In his second assignment of error, Priore argues that the trial court erred in granting summary judgment on his reformation claim because there were genuine issues of material fact as to whether the Policy could be reformed. In his fourth assignment of error, Priore argues that the trial court erred when it held that Priore's failure to read the Policy precluded his reformation claim.[3] We reject both arguments, because, in this case, Priore's failure to read the Policy did, in fact, preclude reformation.

{¶26} Although unambiguous insurance policies are usually enforced as written, where there is clear and convincing evidence of a mutual mistake in the policy, we may employ the equitable tool of reformation to deviate from the terms of the written instrument and to correct the mistake. *Ryan v. Nationwide Ins. Co.*, 8th Dist. Cuyahoga No. 84569, 2005-Ohio-885, ¶ 13. A court may also reform a policy in the case of a unilateral mistake that "affects the insurance policy to such an extent that the contract is not 'a correct integration of the agreement of the parties.'" *Id.*, quoting *Snedegar v. Midwestern Idemn. Co.*, 44 Ohio App.3d 64, 69, 541 N.E.2d 90 (10th Dist.1988).

---

[3]We note that while the trial court did grant summary judgment on the reformation claim, it did not explain the basis for its ruling. Accordingly, the trial court did not "hold" that Priore's failure to read the Policy precluded his reformation claim.

Courts have also reformed insurance contracts when "'the unilateral mistake was made with the knowledge, or due to the negligence or inadvertence of, the insurance agent or insurer.'" *Id.* at ¶ 14, quoting *Snedegar*.

{¶27} But, generally, a court should not reform an insurance policy where the party seeking reformation has failed to fulfill his duty to read the policy.[4] *Allstate Ins. Co. v. Croom*, 8th Dist. Cuyahoga No. 95508, 2011-Ohio-1697, ¶ 11. Reformation is an equitable principle, and "[e]quity aids the vigilant." *Marconi v. Savage*, 8th Dist. Cuyahoga No. 99163, 2013-Ohio-3805, ¶ 23 (discussing the equitable doctrine of laches and explaining that "a person is not entitled to relief when there has been an '[u]nreasonable delay; neglect to do a thing or to seek to enforce a right at a proper time'"), quoting *Russell v. Fourth Natl. Bank*, 102 Ohio St. 248, 265, 131 N.E. 726 (1921). *See also Jacubenta v. Ranch*, 8th Dist. Cuyahoga No. 98750, 2013-Ohio-586, ¶ 15 ("An insurance policyholder has a duty to read its insurance policy."); *Hts. Driving School v. Motorists Ins. Co.*, 2003-Ohio-1737, ¶ 38 (charging a policyholder with knowledge about the contents of his insurance policy).

{¶28} Priore asserts that the Policy should be reformed because both Priore and State Farm had understood and intended that State Farm would issue a policy that covered Priore under the Property Coverages section of the Policy. Priore argues that, contrary to this intention and understanding, State Farm failed to list Priore as a Named Insured

---

[4]"There is an exception, however, if a renewal policy is issued. The insured is not bound by new and more onerous provisions inserted in a renewal policy without his knowledge or consent." *Allstate Ins. Co.* at ¶ 11, citations omitted. This exception is not relevant to the instant case.

under the Policy. But it is undisputed that Priore never read the Policy. Accordingly, the trial court did not err in determining that, as a matter of law, Priore could not prevail on his claim for reformation. The second assignment of error is overruled, as well as the fourth assignment of error insofar as it pertained to the reformation claim.

## *Breach of Contract and Bad Faith*

{¶29} In his fifth assignment of error, Priore argues that the trial court erred in holding that Priore's breach of contract claim and bad faith claim were barred by principles of res judicata. Both parties argue about whether Priore could litigate these claims in light of the Sixth Circuit's decision in the federal case. But we need not resolve this question. Because Priore cannot prevail on his declaratory judgment action or on his reformation claim, it necessarily follows that he cannot prevail on his claims for breach of contract and bad faith.

{¶30} Both of these claims are premised on Priore being an intended beneficiary and insured under the Property Coverages section of the Policy. We have already determined that Priore was not insured under the Property Coverages section of the Policy and that the Policy was not subject to reformation. Because Priore was not covered under the Property Coverages section of the Policy, State Farm did not owe Priore any contractual duty under this section of the Policy. As the existence of a contractual duty is an essential element for Priore's claims for breach of contract and bad faith, he cannot prevail on these claims.

**{¶31}** A plaintiff suing for breach of contract must show that "(1) a contract existed; (2) the plaintiff fulfilled his obligations; (3) the defendant breached his obligations; and (4) damages resulted from this breach." *Re/Max Crossroads Props. v. Roberts*, 8th Dist. Cuyahoga No. 99537, 2013-Ohio-5575, ¶ 11. Because Priore is not covered under the Property Coverages section of the Policy, Priore cannot demonstrate that State Farm breached any obligation to Priore. Similarly, an insurer's fiduciary duty to act in good faith in handling an insured's claim "exists in the context of [the] insurance contract[]." *Gallo v. Westfield Natl. Ins. Co.*, 8th Dist. Cuyahoga No. 91893, 2009-Ohio-1094, ¶ 15. Because Priore is not covered under the Property Coverages section of the Policy, State Farm could not owe a fiduciary duty to Priore with regard to that section of the Policy, and so Priore could not prevail on a bad faith claim against State Farm. Accordingly, the trial court did not err in granting summary judgment to State Farm on these claims, and so we overrule the fifth assignment of error.

### *Negligence and Vicarious Liability*

**{¶32}** In his third assignment of error, Priore argues that the trial court erred in granting summary judgment on his negligence claim because there were genuine issues of material fact regarding whether Robinson breached his duty of care. In his fourth assignment of error, Priore asserts that the trial court erred in holding that Priore's failure to read the Policy precluded his negligence claim.

**{¶33}** A plaintiff bringing a claim for negligence must establish that the defendant owed a duty of care to the plaintiff, that the defendant breached that duty, and that the plaintiff sustained an injury as the proximate result of the breach. *Tornado Techs., Inc. v. Quality Control Inspection, Inc.*, 8th Dist. Cuyahoga No. 97514, 2012-Ohio-3451, ¶ 17. In the insurance context, "an insurance agency has a duty to exercise good faith and reasonable diligence in obtaining insurance that its customer requests," and "an action for negligence may be based upon an insurance agent's failure to procure insurance." *Id.* at ¶ 18, 19. Ordinarily, the issue of whether an agent negligently failed to procure insurance is a question of fact. *Id.*

**{¶34}** Priore makes two alternative arguments with respect to his negligence claim. First, Priore asserts that he did request that he be personally covered under the entire Policy, but that Robinson had negligently failed to procure the requested coverage. We cannot credit this version of events because Priore's evidence indicates that his requests for personal coverage under the Policy were specific to legal liability. He never asked Robinson that he be personally insured for property damage. Priore testified at his deposition as follows:

> Q. In connection with the MPDS Memphis policy, did you ever request any specific coverages that you wanted to make sure were included within the insurance policy?
>
> A. Only that I was protected more so than anyone else because I was always the one that was sued. The name of the — on the lease, was, as the tenants were leasing from MPDS Memphis, however, when they sue you they seem

to forget that and sue you personally and the management company that they write their monthly checks to.

Q. * * * When you say you wanted to be protected personally from lawsuits, did you have specific conversations with Mr. Robinson about that?

A. Well, no.   I'm a property manager * * *.   I mean, he's the insurance professional.   I quite honestly, you know, regarded his expertise to advise me of exactly what I needed.

Q. Okay.   But my question was, did you have discussions with him about whether — what protection the policy provided for you personally if there's a lawsuit by a tenant, for example.

A. Well, no, only, you know, that I wanted to make sure that I was personally named.

Q. Okay.   And did you have any discussions with him regarding any protection for issues other than lawsuits that were filed in connection with MPDS Memphis?

A. I don't think it was just lawsuits.   Just the whole property in general.

* * *

Q. [D]id you have issues or did you have discussions with Mr. Robinson about other issues other than just protection against lawsuits?

A. That I specifically recall, no.

(Priore Depo. May 30, 2012 22:23 - 24:18.)   Robinson testified similarly at his

deposition:

Q. Do you ever recall discussing with Mr. Priore that he would personally be an insured under any of the commercial policies that you had procured for his business?

A. The discussion that we had dealt with, yes, if somebody sued him personally in addition to the LLC would the liability coverage extend and protect him and I said yes.

Q. So he specifically asked you if he would be personally covered if he were sued?

A. From a lawsuit standpoint and liability, yes.

Q. Did you ever qualify or explain that he would not be an insured for any other purpose?

A. Didn't ask that question.

Q. And so I guess that answer to that was "no," is that right?

A. Yeah, he didn't ask that question.

(Robinson Depo. 27:9-25.)

{¶35} Viewing the evidence in the light most favorable to Priore establishes that Priore only asked that the Policy cover him personally with respect to legal liability. Priore's first argument fails, because it is based on the premise that Priore's communications with Robinson should have led Robinson to believe that Priore wanted to be personally covered for the Property. But Priore's own testimony reveals that his attention was focused on protection from litigation. Priore did not say anything to Robinson that would have reasonably caused Robinson to believe that Priore sought to be personally insured on the property side of the Policy. And the Policy did protect Priore from legal liability as he is covered under the Comprehensive Business Liability section of the Policy.

{¶36} Priore next argues that, even assuming that he failed to specifically inform Robinson that he wished to be a Named Insured so that he would be covered under the entire Policy, Robinson was still negligent in failing to recognize Priore's insurable

interest. Priore posits that when he asked Robinson about his coverage under the Policy, a reasonable insurance agent would have responded to Priore by explaining to Priore that the Policy covered him personally only for liability. According to Priore, when Robinson began answering Priore's questions about the Policy and about Priore's coverage, Robinson assumed a duty to Priore to advise him with reasonable care.

{¶37} In other words, Priore is arguing that Robinson was a fiduciary and that, as such, he owed Priore a higher duty of care — a duty not only to provide the specific coverage that Priore requested, but also to advise Priore of the various types of coverage that Priore might need. *See Tornado Techs*., 8th Dist. Cuyahoga No. 97514, 2012-Ohio-3451, at ¶ 24 (interpreting same argument as a claim for breach of fiduciary duty). *See also Hts. Driving Sch.*, 8th Dist. Cuyahoga No. 81727, 2003-Ohio-1737 at ¶ 35 ("A claim of breach of fiduciary duty is essentially a claim of negligence that entails a higher standard of care").

{¶38} We rejected a similar argument in *Tornado Techs*., explaining that although the law "recognizes a public interest in fostering certain professional relationships, such as the doctor-patient and attorney-client relationships," courts have determined that the relationship between an insurance agent and client does not rise to the same level of importance. *Tornado Techs*. at ¶ 27. Although a fiduciary relationship may be created out of an informal relationship where both parties mutually understand that they have entered into a special trust or confidence, in *Tornado Techs*., we concluded that the parties' relationship amounted to "nothing more than an ordinary business

relationship between insurance agent and client," and that the insured "was in the best position to know how much coverage it needed." *Id.* at ¶ 26, 28. *See also Hts. Driving School* at ¶ 38 ("There is no new duty created for the insurance agent to contact the customer regarding deficiencies in the policy that only the insured contemplated as necessary and did not make this necessity known to the agent").

{¶39} Similarly, in the instant case, the evidence presented establishes that the relationship between Robinson and Priore was an ordinary insurance agent-client relationship. Priore was in the best position to know whether his financial stake in the property necessitated personal coverage for the property, but Priore failed to read the Policy and make the relevant inquiries. *See id.* at ¶ 38.

{¶40} Priore attempts to distinguish his case by arguing that in other cases, the insureds never asked their agents about the scope of their coverage. But neither did Priore. As explained earlier, the evidence establishes that Priore's questions to Robinson about his personal coverage were specifically directed toward protecting himself in case of litigation. The record does not indicate that Priore had asked Robinson any questions that would reasonably lead Robinson to believe that Priore was looking to Robinson for general advice about personal insurance coverage under the Policy.[5]

{¶41} Robinson had a duty to exercise good faith and reasonable diligence in

---

[5]And we express no opinion on the legal ramifications of such a scenario.

obtaining the insurance that Priore requested. Viewing the evidence in the light most favorable to Priore, we conclude that Priore requested personal coverage for liability and that Robinson obtained such coverage for Priore. The record further establishes that Priore did not ask Robinson that he be personally covered for the Property, nor did he ask Robinson any questions about personal coverage on the Property. And Priore never asked Robinson for general advice about the scope of his personal coverage under the Policy. In other words, Priore and Robinson's relationship was a typical client and insurance agent relationship. Robinson was not a fiduciary and did not owe a heightened duty to probe Priore about obtaining additional personal coverage under the Policy. Priore's negligence claim against Robinson fails as a matter of law.

{¶42} Because summary judgment was properly granted for the negligence claim, it follows that Priore's vicarious liability claim against State Farm is also subject to summary judgment, because the vicarious liability claim is derivative of the negligence claim. *See Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 20 ("If there is no liability assigned to the agent, * * * there can be no liability imposed upon the principal for the agent's actions").

{¶43} The trial court correctly granted summary judgment on the negligence claim and the vicarious liability claim. Accordingly, we overrule the third assignment of error and that part of the fourth assignment of error that pertained to the negligence claim.[6]

---

[6]Priore argued in his fourth assignment of error that his failure to read the Policy should not preclude him from prevailing on his negligence claim. We need not analyze this argument because summary judgment was warranted regardless of whether Priore read the Policy. Priore's negligence

**{¶44}** For the aforementioned reasons, we overrule all of the assignments of error. The trial court's order granting summary judgment is affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, JUDGE

EILEEN T. GALLAGHER, J., CONCURS;
FRANK D. CELEBREZZE, JR., P.J., CONCURS
IN JUDGMENT ONLY

---

claim fails because the evidence does not establish that Robinson breached a duty of care.