[Cite as *Cumberland Lakefront B., L.L.C. v. Blackwing, L.L.C.*, 2025-Ohio-1263.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CUMBERLAND LAKEFRONT B, LLC,   :

      Plaintiff-Appellee,      :

                                  :          No. 114311

      v.                         :

BLACKWING, LLC, ET AL.,      :

      Defendants-Appellants.      :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 10, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CV-21-953921 and CV-21-953922

---

### *Appearances:*

Tucker Ellis LLP, Anthony R. Vacanti, and Danielle Easton, *for appellee*.

Byron Legal, LLC, and Evan T. Byron, *for appellants*.

MICHAEL JOHN RYAN, J.:

{¶ 1} Defendants-appellants, Blackwing, LLC ("Blackwing"), Corey Freeman, and Christopher Schramm (collectively "Blackwing"), appeal the trial

court's grant of summary judgment in favor of plaintiff-appellee, Cumberland Lakefront B, LLC ("Cumberland"). For the reasons that follow, we affirm.

{¶ 2} Blackwing, as tenant, and Cumberland, as landlord, entered into two lease agreements for commercial spaces located at the North Coast Harbor in downtown Cleveland for Blackwing to open two businesses: a restaurant, "Sandrine," and a coffee shop, "Cute for Coffee." In 2021, Cumberland filed suit against Blackwing based on an alleged failure to pay rent, which included claims for forcible entry and detainer, breach of contract, and monetary damages. Blackwing counterclaimed, setting forth claims for breach of contract, fraud, and declaratory judgment.

{¶ 3} In January 2023, Cumberland moved for summary judgment as to its eviction claim and claim for breach of contract. The trial court granted Cumberland's motion for summary judgment, granted Cumberland immediate possession of the two businesses, and found that Blackwing was liable for monetary damages for breach of contract.

{¶ 4} On March 20, 2023, Cumberland filed a praecipe for a writ of execution, and thereafter, the court issued the writ and instructed the Cuyahoga County Sheriff to oversee the eviction of Blackwing, which occurred on April 6, 2023. Blackwing subsequently moved to vacate the court's summary judgment decision and writ of execution, which the court denied. The trial court held a damages hearing and awarded Cumberland $444,055.13 in damages. In its order awarding damages, the trial court gave Blackwing two weeks to arrange for the removal of any

personal property from the two businesses and turn over keys. After the two-week period had passed, Cumberland moved to deem Blackwing's personal property abandoned, which the trial court granted. Cumberland entered into a lease of the premises with a new tenant.

{¶ 5} Blackwing appealed. *See Cumberland Lakefront LLC v. Blackwing LLC*, 8th Dist. Cuyahoga No. 112706 (July 17, 2023). In its appeal, Blackwing claimed it was appealing from several trial court orders including the court's March 2, 2023 order granting Cumberland's motion for partial judgment on the pleadings; the March 8, 2023 order denying Blackwing's motion for extension of time to respond to the motion for summary judgment; the March 16, 2023 order granting Cumberland's motion for partial summary judgment and granting it immediate possession of the premises; the March 22, 2023 writ of execution; the May 2, 2023 order granting Cumberland's motion to deem personal property abandoned; and the May 3, 2023 order denying Blackwing's motion to vacate reconsideration.

{¶ 6} Cumberland moved to dismiss the appeal, arguing that the issue of possession of the premises and removal and abandonment of Blackwing's personal property was moot. This court granted the motion to dismiss, finding the following:

> Motion by appellee Cumberland Lakefront B, LLC to partially dismiss appeal as moot is granted; however, the portion of the appeal that is not moot, is dismissed for lack of a final appealable order. The appeal of the orders as to the eviction are moot. Once a tenant is removed from the property and the landlord restored to possession, appeal of the eviction is moot . . . . Additionally, an appeal of the order declaring the appellant's property abandoned is moot because the property has been disposed of. The remaining portion of the appeal concerning the second cause of action of damages, is not a final appealable order due

to the fact there is no ruling on the outstanding counterclaims. Appellee contends that the counterclaims are moot. However, due to the unusual circumstances of this appeal, we conclude they are not.

The trial court granted the appellee's summary judgment for eviction and the second cause of action for damages. However, the appellee failed to address the counterclaims for breach of contract and declaratory judgment in the summary judgment motion; therefore, a clear pronouncement as to the counterclaims is necessary. The counterclaims are relevant to the amount of damages that are to be awarded. Where multiple claims are involved, an entry entering judgment as to one or more but fewer than all the claims or parties is not a final appealable order in the absence of Civ.R. 54(B) language stating that "there is no just reason for delay." . . . Accordingly, appeal is dismissed.

(Cleaned up.) *Id.*, Motion No. 564991 (July 17, 2023).

{¶ 7} On remand, the trial court granted Cumberland leave to file a second motion for summary judgment on the remaining counterclaims for breach of contract and declaratory judgment. On July 29, 2024, the trial court granted Cumberland's motion for summary judgment as to the remaining counterclaims.

{¶ 8} Blackwing filed the instant appeal. Blackwing attempted to appeal several orders, including those that this court dismissed in the first appeal. Cumberland moved to dismiss Blackwing's appeal of those orders, which this court granted finding that appeal of the trial court orders pertaining to the eviction and disposal of personal property were moot. This court concluded that the trial court's July 29, 2024 order granting summary judgment as to Blackwing's counterclaims was the only order that remained pending on appeal.

{¶ 9} Blackwing's assignment of errors are as follows:

I. The trial court committed reversible error by awarding Appellee summary judgment on March 16, 2023.

II. The trial court committed reversible error by awarding Appellee summary judgment on July 29, 2024.

III. The trial court's failure to set forth any case-specific analysis in its summary judgment decisions constitutes reversible error.

IV. The appeal of the trial court's summary judgment ruling Cumberland's first cause and on the ruling regarding Appellants' personal property is not moot.

V. All judgment entries set forth in Appellants' notice of appeal should be reversed save for the March 2, 2023 entry.

{¶ 10} The first and fourth assignments are rendered moot based on this court's decision to grant Cumberland's motion to dismiss. The fifth assignment of error is not in conformance with App.R. 12 and 16 and is hereby summarily overruled.[1] We combine the second and third assignments of error for ease of review.

{¶ 11} Appellate review of summary judgments is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Pursuant to Civ.R. 56(C), summary judgment is appropriate when (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, the party being entitled to have the evidence construed most strongly in his

---

[1] App.R. 16(A)(7) requires an appellant to provide "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 12(A)(2) provides that an appellate court "may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)."

or her favor.  *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679 (1995), paragraph three of the syllabus.

{¶ 12} The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  Civ.R. 56(E); *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385 (1996).

{¶ 13} Civ.R. 52 states that "[f]indings of fact and conclusions of law required by this rule and by Rule 41(B)(2) are unnecessary upon all other motions including those pursuant to Rule 12, Rule 55 and Rule 56." "'[I]t is well settled in Ohio that a trial court is not required to issue a written opinion containing findings of fact and conclusions of law when ruling on a motion for summary judgment.'" *Priore v. State Farm Fire & Cas. Co.*, 2014-Ohio-696, ¶ 11 (8th Dist.), quoting *Solomon v. Harwood*, 2011-Ohio-5268, ¶ 61 (8th Dist.); *Maddox v. E. Cleveland*, 2012-Ohio-9, ¶ 23 (8th Dist.).  Blackwing argues that the trial court erred by not issuing a factual basis for summary judgment.  The trial court did not err in this case by using Civ.R. 56 language in its entry granting summary judgment; including a factual basis for its decision was unnecessary.

**{¶ 14}** Blackwing also argues that the trial court erred when it granted summary judgment in favor of Cumberland on its counterclaims for breach of contract and declaratory judgment. Blackwing contends there are genuine issues of material fact that preclude an order granting summary judgment in favor of Cumberland on the issues of both liability and damages.

**{¶ 15}** We note that Blackwing has attempted to incorporate by reference the arguments made in its first assignment of error into this assignment of error. App.R. 12(A)(2) and 16(A)(7) require an appellant to set forth a separate argument in support of each assigned error. Consequently, "an appellant 'cannot incorporate the arguments contained in the other assignments of error to support a different assignment of error.'" *State v. McKnight*, 2023-Ohio-1933, ¶ 10 (9th Dist.), quoting *State v. Calhoun*, 2021-Ohio-1713, ¶ 24 (9th Dist.); *see also State v. Washington*, 2023-Ohio-1667, ¶ 117 (8th Dist.).

**{¶ 16}** This court declines to extrapolate and apply the arguments Blackwing made in its previous assignments of error to this assignment of error. *McKnight* at ¶ 10. We will confine our analysis to the argument Blackwing raised in this assignment of error, although we note that Blackwing failed to comply with the appellate rules in this assigned error as well as failing to include any citations to authority or parts of the record upon which it relies. For this reason alone, we could overrule the assignment of error but employ our discretion to review Blackwing's claim.

{¶ 17} A declaratory-judgment action enables a court to declare the rights, status, and other legal relations of the parties. *Spaeth v. State Auto. Mut. Ins. Co.*, 2012-Ohio-3813, ¶ 12 (8th Dist.), citing Civ.R. 57; R.C. Ch. 2721. In its counterclaim for declaratory judgment, Blackwing requested the trial court declare that Cumberland's complaint fails because it breached the subject leases and failed to cure prior to commencing this action and cannot establish damages; that landlord self-help is not available to Cumberland under the leases because the leases did not contain the requisite statutory language; that Cumberland cannot exercise any other rights adverse to Blackwing; and that the court order any further relief necessary.

{¶ 18} The trial court in this case already determined that there was a breach of the lease by Blackwing and awarded damages to Cumberland. As to Blackwing's claim that Cumberland improperly exercised self-help, Cumberland presented evidence that it followed a lawful eviction process and obtained a judgment from the trial court, which issued a writ of execution allowing for Blackwing's eviction. Blackwing makes no attempt to rebut this argument in its response to Cumberland's motion for summary judgment. Blackwing also provided no evidence that Cumberland exercised any rights adverse to Blackwing or that Blackwing is entitled to any other relief. Thus, Blackwing has failed to show that a genuine issue of fact exists that precludes summary judgment. The trial court correctly granted summary judgment to Cumberland on this claim.

{¶ 19} In its counterclaim for breach of contract, Blackwing contends that Cumberland breached the leases by failing to deliver the space in accordance with

the lease agreement, failed to reimburse Blackwing for tenant improvements or utility installation costs, and failed to allow Blackwing to complete its project by preventing installation of a vent hood.

{¶ 20} To prevail on a breach-of-contract claim, the party seeking to enforce the contract must prove all of the following elements by a preponderance of the evidence: (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damage or loss to the plaintiff. *Skoda Minotti Co. v. Kent*, 2022-Ohio-3237, ¶ 14 (8th Dist.), citing *Holliday v. Calanni Ents.*, 2021-Ohio-2266, ¶ 20 (8th Dist.).

{¶ 21} The thrust of Blackwing's argument on appeal is that it is entitled to $167,050 in tenant improvement funds that Cumberland failed to remit to it.

{¶ 22} Each lease provided for a $50 per square foot allowance for tenant improvements: "[Cumberland] will provide a $50 per square foot allowance for Tenant Improvements." In its brief on appeal, Blackwing argued that the full amount was due as soon as the leases were executed. During oral argument, Blackwing conceded that standard practice is normally to submit receipts before payment for tenant improvements but argued that the leases were silent as to that provision so the money was due up front. Cumberland contends that it could not pay Blackwing for tenant improvements until Blackwing submitted receipts, which it did not do.

{¶ 23} Courts presume the intention of the parties is reflected in the plain language of a contract. *Raudins v. Hobbs*, 2018-Ohio-2309, ¶ 25 (8th Dist.).

If terms in a contract are vague or ambiguous, industry custom is relevant to clarify the meaning of the terms. *See Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 248 (1978), citing *Steel Works v. Dewey*, 37 Ohio St. 242, 249 (1881) (noting that "although extrinsic evidence of a general custom or trade usage cannot vary the terms of an express contract, such evidence is permissible to show that the parties to a written agreement employed terms having a special meaning within a certain geographic location or a particular trade or industry, not reflected on the face of the agreement"); *Bennett v. Heidinger*, 30 Ohio App.3d 267, 270 (8th Dist. 1986) ("Extrinsic evidence of custom or usage in a particular industry may be considered in interpreting a contract.")

{¶ 24} An allowance is defined as "[a] deduction, an average payment, a portion assigned or allowed: the act of allowing." The Law Dictionary, https://thelawdictionary.org/allowance/ (accessed Mar. 18, 2025), archived at https://perma.cc/6WYY-L6ZK. Cumberland asserted that in the context of the commercial leasing industry, tenant improvement allowances are a term of art that describes funding provided by a landlord and used to reimburse tenants up to an agreed dollar amount per square foot for tenant improvements to a commercial space, which can include build-out or renovation.

{¶ 25} Attached to Cumberland's motion for summary judgment was an affidavit from Richard Pace, CEO of Cumberland and a licensed architect. Pace averred, in part:

18. In commercial leasing and construction, Tenant Improvement allowance is a term with a specific meaning, and describes funding (sometimes obtained with the mortgage as part of financing in new construction) provided by the landlord to reimburse tenants up to an agreed dollar amount per square foot for tenant improvements, build-out, or renovation of a commercial space.

19. In my professional experience, the process followed by Cumberland for reimbursement of Tenant Improvement funds is typical in the commercial real estate industry, including requiring submission of receipts and obtaining bank approval to release Tenant Improvement funds, to ensure the funds being distributed were, in fact, used for Tenant Improvements.

{¶ 26} Blackwing contends that Cumberland breached the terms of the leases because it failed to pay for improvements it made to the premises. Blackwing concedes it did not provide receipts for its expenses to be reimbursed but, again, claims it was not required to do so under the terms of the lease. Contrary to its unsupported assertions, Blackwing has not shown that the tenant improvements funds were due to it in full upon execution of the lease; simply, Blackwing presented no evidence in support of its theory that the funds were to be paid before any improvements were made or receipts provided.

{¶ 27} The evidence before us is that Cumberland did not reimburse Blackwing for improvements because Blackwing never submitted receipts or other proof that it had made improvements to the premises and the cost of the improvements. Because Blackwing has failed to meet its reciprocal burden under Civ.R. 56, it cannot show that a genuine issue of material fact remained that would preclude summary judgment.

{¶ 28} Therefore, the trial court did not err in granting summary judgment in favor of Cumberland.

{¶ 29} Accordingly, the second and third assignments of error are overruled.

{¶ 30} Judgment affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

EMANUELLA D. GROVES, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR